469 So.2d 820 (1985)
ST. REGIS PAPER COMPANY/SOUTHERN CULVERT OPERATIONS, Appellant,
v.
QUALITY PIPELINE, INC., and KTI Corporation, Appellees.
No. 83-2113.
District Court of Appeal of Florida, Second District.
April 24, 1985.
Rehearings Denied May 30, 1985.
*821 Joseph D. McFarland of Devito, Colen & Forlizzo, St. Petersburg, for appellant.
Chad P. Pugatch of Cooper, Shahady, Frazier, Pugatch & Meyer, Fort Lauderdale for appellee Quality Pipeline, Inc.
Anthony H. Pelle of Katz, Squitero, Linden & Faust, Miami, for appellee KTI Corp.
DANAHY, Judge.
The question we must answer is whether a plan of reorganization, accepted by the creditors and approved by a bankruptcy court, extinguishes the right of one creditor to proceed in state court to enforce a state judgment against another creditor. The trial court, agreeing with the appellees, answered yes. We disagree.
Appellee Quality Pipeline, Inc. (Quality), a subcontractor, entered into a contract and provided substantial work in the nature of excavation, land development and related services to the owner, Sunshine Meadows, Inc. (Sunshine). Appellant St. Regis Paper Company/Southern Culvert Operations (St. Regis), pursuant to its contract with Quality, supplied corrugated metal pipe and other materials to Quality on the project. Appellee KTI was a mortgage lender on the project and later succeeded to Sunshine's interest.
Quality and St. Regis separately filed their claims of lien pursuant to chapter 713, Florida Statutes (1981), against Sunshine's real property. The amount of Quality's lien included the total amount owed by Sunshine while St. Regis' lien was only in the amount of its claim against Quality under their agreement.
Shortly after the liens were filed, Sunshine filed a voluntary petition for reorganization under chapter XI of the United States Bankruptcy Code. During the pendency of the bankruptcy proceedings, St. Regis sued Quality in circuit court for *822 breach of contract and obtained a final judgment in the amount due from Quality.[1]
Meanwhile, the bankruptcy court confirmed a plan of reorganization (Plan) between Sunshine and its creditors.[2] Under the Plan KTI became a successor in interest to Sunshine. The Plan further offered all mechanic's lien creditors the following two options:
Alternative I: One hundred (100%) percent of their claim as proven and allowed. Five (5%) percent to be paid upon confirmation of Modified Plan of Reorganization and five (5%) percent each and every four (4) months thereafter until paid in full without interest.
Alternative II: A cash sum equivalent to forty-two (42%) percent of their claim as proven and allowed as a full and final settlement upon confirmation of the Modified Plan of Reorganization.
Through ballots filed with the bankruptcy court, both Quality and St. Regis voluntarily accepted the Plan. Quality elected Alternative I and is receiving its 100% payout in installments. St. Regis elected Alternative II and received the 42% cash pay-out. St. Regis then executed a release of lien in favor of KTI, releasing the Sunshine property from its claim of lien.
Subsequently, St. Regis proceeded in the circuit court to obtain execution on its unsatisfied judgment against Quality by garnishing the installment payments due from KTI to Quality under the Plan. The court issued the writ of garnishment and directed KTI to answer. When KTI defaulted by failing to answer, St. Regis obtained a final default judgment against KTI for the 58% balance Quality still owed. On the same day the final judgment was rendered, Quality, later joined by KTI, sought to dissolve the garnishment and to adjudicate the rights of St. Regis to the remaining 58%. Quality and KTI argued that St. Regis' final judgment against Quality had been satisfied in full by its acceptance of the money under the Plan. Additionally, KTI filed a motion to vacate the default judgment rendered against it as garnishee on grounds that the judgment was void for lack of jurisdiction due to improper service of process. The court granted KTI's motion to vacate the default judgment and ordered KTI to answer the writ of garnishment.
After an evidentiary hearing, the court found that the provisions of the Plan created an accord and satisfaction of Quality's indebtedness. The court therefore ordered that the garnishment be dissolved and authorized KTI to release to Quality all funds which had been held subject to the writ.
At this point we are confronted with the question posed at the outset of this opinion. In answering this question we find it is necessary to review pertinent sections of our mechanic's lien law before turning to the effect of the bankruptcy proceedings. We initially note that chapter 713.30, Florida Statutes (1983), reads:
Other actions not barred.  This [Mechanic's Lien] shall be cumulative to other existing remedies and nothing contained in part I of this chapter shall be construed to prevent any lienor or assignee under any contract from maintaining an action thereon at law in like manner as if he had no lien for the security of his debt, and the bringing of such action shall not prejudice his rights under part I of this chapter, except as herein otherwise expressly provided.
While this section affords a direct right of action against the owner of the improved property, it does not ignore or supersede *823 any other remedies available to the party seeking payment. See Logan Construction v. Warren Brothers Construction Co., 268 So.2d 369 (Fla. 1972) (a materialman may recover a personal judgment against the contractor with whom he is in privity while maintaining a mechanic's lien action against the property owner); Crane Co. v. Fine, 221 So.2d 145 (Fla. 1969) (one who has performed services or furnished materials in the improvement of real property is not limited to proceeding under the mechanic's lien law); General Electric Co. v. Atlantic Shores, Inc., 436 So.2d 974 (Fla. 5th DCA 1983) (a materialman does not have to make an election of remedies); Halifax Construction Co. v. Chastain Groves, Inc., 192 So.2d 15 (Fla. 1st DCA 1966) (mechanic's lien law does not bar a lienor from maintaining an action at law on the contract); Remington Construction Co. v. Hamilton Electric, Inc., 181 So.2d 183 (Fla. 3d DCA 1965) (remedies by way of an action on note from a contractor for materials supplied and action to foreclose mechanic's lien are merely cumulative; until such time as judgment on note is satisfied, holder may bring mechanic's lien claim against the property owner).
A reading of these cases and the statute makes it evident that St. Regis need not make an election of remedies; that is, whether to pursue its rights under the contract or under the lien. St. Regis' rights under the contract and its subsequent judgment against Quality constitute an alternative remedy and an independent cause of action. Enforcement of the mechanic's lien by St. Regis against Sunshine is a cumulative remedy provided by the statute and incidental to its contract with Quality. Until its claim is satisfied, St. Regis could proceed to enforce its lien and could also bring an action to recover its monies under the contract. Therefore, were it not for the bankruptcy proceedings, our disposition of this case would be rather clear since the rights and liabilities of the materialman, the subcontractor, and the owner are clearly defined by statute and case law.
We turn, then, to an examination of what, if any, effect the bankruptcy proceedings had on St. Regis' claim against Quality. Quality argues that upon confirmation of a chapter XI plan by the bankruptcy court the rights and interests of all creditors terminate except as provided under the plan. See Friedman v. Schneider, 238 Mo. App. 778, 186 S.W. 204 (1945); Ely v. Donoho, 45 F. Supp. 27 (S.D.N.Y. 1942). We are not persuaded by this argument. It ignores generally recognized principles of bankruptcy law. First, the jurisdiction of the bankruptcy court is limited and is framed by federal statute according to the particular proceeding and type of relief sought. 11 U.S.C. § 301 (1982). See In re Trigg, 630 F.2d 1370 (10th Cir.1980). Under chapter XI the bankruptcy court has jurisdiction if only the debtor and its property; it has no jurisdiction to decide collateral disputes between third parties which do not involve the debtor and its property unless settlement of those disputes is a necessary step in the debtor's reorganization. In re Grand Spaulding Dodge, Inc., 5 B.R. 481 (Dist.Ct.Ill. 1980); Riffe Petroleum Co. v. Cibro Sales Corp., 601 F.2d 1385 (10th Cir.1979); In re Harwald Co., 497 F.2d 443 (7th Cir.1974); In re Texas Consumer Finance Corp., 480 F.2d 1261 (5th Cir.1973); Baker & Taylor Drilling Co. v. Stafford, 369 F.2d 551 (9th Cir.1966); Rosehedge Corp. v. Sterett, 274 F.2d 786 (9th Cir.1960). Thus, in terms of jurisdiction, the bankruptcy court affects only the relationships between the debtor and its creditors. See In re Kornbluth, 65 F.2d 400 (2d Cir.1933); R.I.D.C. Industrial Development Fund v. Snyder, 539 F.2d 487 (5th Cir.1976), cert. denied, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977); First National Bank v. Millender, 149 Ga. App. 65, 253 S.E.2d 417 (1979); see generally 9 Am.Jur.2d Bankruptcy § 1 (1980). Moreover, 11 U.S.C. § 524(e) (1982) of the Bankruptcy Code specifically provides:
Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.
*824 This section applies in a case filed under chapter XI. 11 U.S.C. § 103 (1982).
Second, bankruptcy imposes certain relationships on the various creditors where, prior to bankruptcy, they shared no particular common interest other than the financial health of the debtor. Bankruptcy "pits one creditor against another, each seeking to enforce his rights against the debtor's limited and insufficient assets, to the exclusion of the others." 9 Am.Jur.2d Bankruptcy § 1 (1980) pp. 42-43.
Third, the effect of a confirmation of a reorganization plan pursuant to chapter XI is to discharge only the bankrupt debtor from all debts and liabilities provided for in the plan except those which are not dischargeable. 11 U.S.C. § 1141 (1982). This section provides in applicable part:
(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder of, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
... .
(c) After confirmation of a plan, the property dearth with by the plan is free and clear of all claims and interests of creditors, of equity security holders, and of general partners in the debtor, except as otherwise provided in the plan or in the order confirming the plan.
(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan 
(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title... .[3]
Therefore, because an entity other than the bankrupt debtor is not relieved from any of its liabilities on the debt, the rights of a bankruptcy creditor against such entity are not affected on any theory of waiver, estoppel, merger, novation, election of remedies, or other theory, by the filing of a proof of claim, allowance of the claim, or as to the balance of the debt remaining unpaid, by the acceptance of a benefit thereunder. See 11 U.S.C. §§ 524(e) and 1141 (1982); see generally 8A C.J.S. Bankruptcy § 475 (1963), p. 987.
Applying the above principles to this case, we conclude that the dispute between St. Regis and Quality is not within the purview of the bankruptcy court and the operation of the Plan except as the dispute relates to the claims each one has against Sunshine's assets. Sunshine's discharge cannot and does not affect any liability which exists between these two bankruptcy creditors. The language of the Plan contained no additional stipulation or provision specifically relieving Quality of its contractual obligation to St. Regis. That is understandable since settlement of any private dispute between Quality and St. Regis is not necessary to accomplish the reorganization of Sunshine. Therefore, the "binding" effect of the Plan extends only to the debtor/creditor relationship existing between Sunshine and St. Regis on the one hand and Sunshine and Quality on the other.
Furthermore, we do not agree with the trial judge's view that the release of lien and acceptance of payment by St. Regis is an accord and satisfaction which bars St. Regis' independent claim against Quality. The "release of lien" affected only the relationship between St. Regis and Sunshine and was executed as an incidental requirement of the Plan to clear title to Sunshine's property. Quality was not a party to the *825 release. Furthermore, the release contained no reference to the final judgment obtained by St. Regis against Quality. Under these circumstances, there is nothing to show any attempt on the part of St. Regis to release Quality from its obligation to pay for materials St. Regis supplied to Quality on the job. Because that is so, Quality cannot claim rights or benefits which derive from the release of the debtor's property from any claims of lien. See Continental Casualty Co. v. Westinghouse Electric Supply Co., 403 F.2d 761 (5th Cir.1968).
Moreover, the defense of accord and satisfaction involves the issue whether the parties mutually intended to effect a settlement of an existing dispute by entering into a superseding agreement. See Hannah v. James A. Ryder Corp., 380 So.2d 507 (Fla. 3d DCA 1980). In this case the Plan and release of lien which Quality argues constitute an accord and satisfaction contain no language indicating a mutual intent to effect a settlement of St. Regis' claim against it. St. Regis did not accept from Quality something different from what could be legally enforced by execution upon the judgment. See Chappell v. Nalle, 119 Fla. 711, 160 So. 867 (1935). Thus, St. Regis' acceptance of the Plan and payment "as full and final settlement" of its mechanic's lien claim against Sunshine did not in and of itself result in an accord and satisfaction, thereby discharging its separate claim against Quality. See United States v. Lifestock Producers Co-op, 493 F. Supp. 1001 (E.D.Wis. 1980); First National Bank.
In sum we hold that St. Regis could participate in the bankruptcy proceedings and receive benefits thereunder on its mechanic's lien claim against Sunshine without relinquishing its right to enforce its contract claim, now reduced to judgment, against Quality. See Union Carbide Corp. v. Newboles, 686 F.2d 593 (7th Cir.1982) (confirmed chapter XI plan did not operate to discharge bankrupt's guarantors despite language in plan to the contrary and the plaintiff's receipt of discharge of disbursement); R.I.D.C. (creditor's approval of chapter XI bankruptcy plan that purported to eliminate underlying debt did not prevent creditor from having recourse against guarantor); Land O'Lakes Creameries, Inc. v. Dennis, 340 Ill. App. 524, 92 N.E.2d 356 (1950) (acceptance of partial payment of an individual's debt guaranteed by corporation under bankruptcy composition would not preclude plaintiff from recovering balance of debt from corporation).
Finally, we note that St. Regis seeks only the amount which exceeds the amount it accepted in satisfaction of its claim against Sunshine. This is permitted. By analogy, St. Regis is in much the same position as a lienholder who receives only partial payment of the underlying debt in a lien foreclosure sale. Such a lienholder can then seek a "deficiency" judgment against any person liable for the debt. 713.28(3), Fla. Stat. (1983). See C.A. Davis, Inc. v. Yell-For-Pennel, Inc., 274 So.2d 267 (Fla. 3d DCA 1973); Emery v. International Glass & Manufacturing, 249 So.2d 496 (Fla. 2d DCA 1971). While there was no "sale" of the property here, the acceptance of the payment and relinquishment of lien rights under the Plan had the same effect on St. Regis. We conclude that the balance owed to St. Regis for material supplied to Sunshine is equivalent to a "deficiency" to which St. Regis is entitled. Since Quality remains liable on its own debt, St. Regis may collect the balance due from Quality and the garnishee KTI.
Accordingly, we reverse and remand to the trial court for entry of a revised judgment and writ of garnishment. The trial court should award St. Regis the full amount to which it is entitled after allowing for a credit for the amount already received from Sunshine.
REVERSED . AND REMANDED WITH INSTRUCTIONS.
OTT, A.C.J., and SCHOONOVER, J., concur.
NOTES
[1] We note that there was no need to obtain relief from the automatic stay provisions of 11 U.S.C. § 362 (1982). St. Regis' action against Quality was not an action against the bankrupt debtor Sunshine and therefore not subject to the automatic stay.
[2] 11 U.S.C. § 101 (1984) provides the following applicable definitions:

(9) "creditor" means 
(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
... .
(12) "debtor" means person or municipality concerning which a case under this title has been commenced;
[3] Pursuant to this section, mortgages and liens on assets of the debtor are not liabilities that ordinarily will be discharged by confirmation of a plan. Accordingly, the debtor must continue making payments on mortgages and liens after bankruptcy unless it negotiates a settlement and obtains a release from the lienholder.