**In re Ralph R. LUGO, Debtor.**

**SUN BANK/SOUTH FLORIDA, N.A., Plaintiff,**

v.

**Ralph R. LUGO, Defendant.**

**Bankruptcy No. 91–14184 BKC–SMW.**

**Adv. No. 91–1182 BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

June 2, 1992.

R.C. Rogers of Rogers, Morris & Ziegler, Ft. Lauderdale, Fla., for Sun Bank/South Florida, N.A. (Sun Bank).

R. Sanchez, Hialeah, Fla., for Ralph R. Lugo (debtor).

### MEMORANDUM OF DECISION ON § 523(a)(4) COMPLAINT

FRANCIS G. CONRAD, Bankruptcy Judge.[*]

This adversary proceeding is before us [1] on Sun Bank's § 523(a)(4) complaint to determine dischargeability of a debt. We will deny the relief sought and declare the debt to be dischargeable, because we hold that Debtor neither owed nor breached a fiduciary duty to Sun Bank, and, in the alternative, that Sun Bank is not entitled to contribution from Debtor.

The essential facts are not in dispute. A wrongful death action resulted in a cash settlement to Debtor and his two children, who were then minors. Part of the settlement went to Debtor personally; the balance was awarded to his two children. Upon settlement, Debtor was appointed guardian of his two children by the Probate Division of the 11th Judicial Circuit on March 6, 1985. *In re Guardianship of Mark Anthony Lugo and Emery Jane Lugo*, Probate No. 85–2178. That same date, the Probate Court issued an "Order Designating Depository for Cash Assets" (the "Order"), which required deposit of the children's award with Sun Bank. The Order, issued with the prior consent of Sun Bank, required the bank to hold the children's awards

---

[*] Sitting by special designation.

**1.** Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the general reference to this Court from the U.S. District Court for the Southern District of Flor-

ida. This is a core matter under 28 U.S.C. § 157(b)(2)(I). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

in safekeeping subject to such instructions by the Guardian ... as [are] authorized by Orders of this Court directed to said Depository and to permit withdrawal thereon only upon Order of this Court. *Id.* The Order also required "any person or corporation having possession or control of such funds" to pay them over to Sun Bank, and provided that "the receipt and acceptance thereof by [Sun Bank] shall relieve the person or corporation from all further responsibility therefor." *Id.* It is undisputed that Sun Bank agreed to act as designated depository, received a copy of the Order, and accepted deposit of the $25,000 from Debtor.

The deposit initially was put in the form of a Certificate of Deposit (CD) in trust for both children. Within six months, however, the CD had been rolled over twice, reduced in amount to $20,000, and the name of one child had been dropped. The diminution in value to $20,000, which is not an issue before us, is not accounted for by the evidence presented. Nor do we know whether any Court orders were presented to Sun Bank to authorize the reduction in original principal amount or the change in ownership.

On Sept. 9, 1985, the $20,000 CD was used, with the consent of Sun Bank, as collateral for a personal loan made by Sun Bank to Debtor. Although Sun Bank well knew that the CD account was restricted by order of the Probate Court at the time it was put up by Debtor as collateral, it took no action to prevent its use for that purpose. Indeed, the record indicates, and we find, that Debtor, who lacked financial sophistication, did not intend to misappropriate funds, but agreed to the collateral arrangement at the suggestion of Sun Bank. Eventually, Debtor defaulted on the loan secured by the CD.

In 1990, one of Debtor's two children, Emery, now an adult, filed a Petition for Contempt in the Probate Court against Sun Bank as the designated depository of the guardianship's cash assets. The Probate Court determined that Sun Bank caused the children's estate to suffer damages "by reason of its negligence and misfeasance."

Specifically, Sun Bank improperly permitted the withdrawal of the entire guardianship estate held by it without Court Order authorizing same in violation of the Order dated March 6, 1985 designating Sun Bank as depository pursuant to Florida Statute Sec. 69.031 and in violation of the Acceptance as depository executed by Sun Bank dated January 25, 1985 and filed in this cause on March 6, 1985.

*In re Guardianship of Lugo,* "Order on Petition for Contempt and Order to Show Cause," Probate Case No. 85–2178 (11th Jud.Cir.Fla. March 6, 1985).

The Probate Court ordered Sun Bank to pay Emery the full amount due her, plus interest, costs and attorney's fees, less $10,000 she had previously recovered directly from Debtor. In addition, Sun Bank was required to place the full amount due the remaining minor child, including interest, in a restricted account as required by the original Order. Debtor does not dispute Sun Bank's claim that its losses total $10,065.81 as a result of the events set out above.

Sun Bank's complaint against Debtor in this adversary proceeding seeks to have the $10,065.81 declared a non-dischargeable debt of Debtor to Sun Bank. Its argument has three steps. Sun Bank argues, first, that Debtor owes it a fiduciary duty, and, second, that Debtor's liability for breach of that fiduciary duty does not depend upon proof of a subjectively evil intent.

To establish a defalcation [under § 523(a)(4)], the plaintiff is not required to prove that the fiduciary derived a personal benefit from the diversion of the estate or that there was any criminal intent. [Plaintiff] need prove only that the diversion was unauthorized and intentional.

*In re Stalnaker,* 19 B.R. 784, 785 (Bkrtcy. S.D.Fla.1982). *See also, Hirsch v. Winter,* 108 B.R. 345, 346 (S.D.Fla.1989) (Under § 523(a)(4),[2] the term " 'defalcation' gener-

---

**2.** 11 U.S.C. § 523(a)(4) provides, in pertinent     part:

ally means the 'failure of the fiduciary to account for the money he received in his fiduciary capacity.' ") (citation omitted). The third step in Sun Bank's argument is its conclusion that Debtor is liable for defalcation, made nondischargeable under § 523(a)(4), based simply on the fact that the money is missing.

■ Sun Bank stumbles, we believe, at the first step, because it is unable to establish that Debtor owed it a fiduciary duty. Accordingly, we do not address the last two steps of its argument. While Debtor might have been liable to his children had they brought this adversary proceeding, Sun Bank must establish that it, too, was owed a duty by Debtor. Sun Bank claims that Debtor's deposit of the estate funds in the restricted account under the Probate Court's Order gave rise to a duty owed by Debtor to Sun Bank.

Generally, funds on general deposit in a bank are the property of the bank, that is, in the absence of a special agreement imparting a different character, the relationship between the parties is simply that of debtor-creditor. However, the nature of this deposit is not general, but very specific. The funds to be held by Sun Bank were intended to be held in trust for the ward. There is no question that Sun Bank was under a fiduciary duty to hold the funds. Accordingly, the Debtor was under a mutually existing fiduciary duty, which he owed to the

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    (4) for fraud or defalcation while acting in a fiduciary capacity....

3. Fla.Stat. § 69.031(1) provides, in pertinent part:
    (1) When it is expedient in the judgment of any court having jurisdiction of any estate in process of administration by any guardian ... or other officer, because the size of the bond required of the officer is burdensome or for other cause, the court may order part or all of the personal assets of the estate placed with a bank ... designated by the court.... All interest, dividends, principal and other debts collected by the financial institution on account thereof shall be held by the financial

bank, to refrain from misappropriating the funds.

Feb. 21, 1992 letter memorandum from Sun Bank's counsel, p. 2. (Citations omitted.) The assertion of the last sentence—that Debtor was under a fiduciary duty to Sun Bank—simply does not follow. The plain language of the Order, and of the underlying statutory scheme, clearly indicate that the intent of both was to relieve a guardian, like Debtor, from responsibility for estate funds placed into a designated depository.

The Order unambiguously provides that once Debtor deposited the funds in Sun Bank, he was "relieve[d] ... from all further responsibility therefor." Sun Bank, as it concedes, thereupon became responsible for keeping the funds "in safekeeping." Indeed, both the Order and statute [3] on which it is based expressly mandate that all instructions from a guardian to a designated depository must undergo Court scrutiny, and are to be complied with only if the Court so orders.

A clear intention to place the fiduciary responsibility for deposited funds upon the designated depository, and to remove it from the guardian, is made explicit by subsections (2) and (3) of Fla.Stat. § 69.031. Subsection (2) [4] requires that the Court, after deposit of estate funds into a designated depository, either waive the guardian's bond altogether, or reduce it so that it applies only to funds remaining in the guardian's hands. Subsection (3) [5] express-

institution in safekeeping, subject to the instructions of the officer authorized by order of the court directed to the financial institution.

4. Fla.Stat. § 69.031(2) provides in, pertinent part:
    (2) ... After the receipt for the original assets has been filed by the financial institution, the court shall waive the bond given or to be given or reduce it so that it shall apply only to the estate remaining in the hands of the officer, whichever the court deems proper.

5. Fla.Stat. § 69.031(3) provides:
    (3) When the court has ordered any assets of an estate to be placed with a designated financial institution, any person or corporation having possession or control of any of the assets, or owing interest, dividends, princi-

ly provides that the Court-ordered deposit of estate funds into a designated depository by one with possession or control over them "relieves the person or corporation from *further* responsibility therefor." (Emphasis added.)

> Under Florida law, Sun Bank notes,
>
> [t]here is a fiduciary relation between parties where confidence is reposed by one and a trust accepted by the other. The relation need not be legal but may be moral, social, domestic, or purely personal. Thus, the term, "fiduciary" or "confidential" relation as defined is a very broad one. Such a relation has been said to exist and to suffice as a predicate for relief in all cases wherein influence has been acquired and abused, or wherein confidence has been reposed and betrayed.

*Prescott v. Kreher,* 123 So.2d 721, 727 (2d Fla.Dist.Ct.App.1960). That pattern, however, is simply not present in the relationship between Sun Bank and Debtor. The confidence reposed was not by Sun Bank in Debtor, but by Debtor as guardian of his children's estate in Sun Bank. Moreover, it was Sun Bank that accepted that trust, and thereby relieved Debtor of "further responsibility," under both the terms of the Order and Florida statutory law. Finally, Debtor put up the CD as collateral with Sun Bank's knowledge and authority. Sun Bank, as creator and custodian of the restricted account, cannot assign to Debtor its responsibility for the losses suffered by the estate of the Debtor's children.

Accordingly, we hold that Debtor neither owed nor breached a fiduciary obligation to Sun Bank, and that any debt he might owe to Sun Bank is dischargeable.

 As an alternative holding, we find that Sun Bank has failed to prove that it is entitled to contribution from Debtor in any case. Sun Bank was adjudicated liable for the losses to the estate by reason of its own "misfeasance and negligence." *In re Guardianship of Lugo,* "Order on Petition for Contempt and Order to Show Cause," *supra.* We will assume for the sake of this discussion, although it has not been established judicially, that Debtor also was liable. The Florida statute creating a right of contribution among joint tortfeasors, expressly excludes "breaches of trust or of other fiduciary obligation." Fla.Stat. 768.-31(2)(g).[6]

■ Finally, we find that even if Sun Bank had a right to contribution from Debtor, it was satisfied when Debtor paid $10,000 to the petitioning child without the necessity of judicial proceedings. Florida's contribution statute requires that contribution be allocated pro rata according to the relative degrees of responsibility of the wrongdoers. Fla.Stat. 768.31(3)(a).[7] We conclude, based upon the circumstances previously set forth, that Sun Bank's fault was not less than Debtor's. Accordingly, because both have paid roughly equivalent amounts, Debtor owes nothing to Sun Bank under Florida's contribution statute.

Counsel for Debtor shall submit an order consistent with the findings and conclusions of law set forth in this Memorandum of Decision.

---

pal or other debts on account thereof, shall pay and deliver such assets, interest, dividends, principal and other debts to the financial institution on its demand whether the officer has duly qualified or not, and the receipt of the financial institution relieves the person or corporation from further responsibility therefor.

**6.** Fla.Stat. 768.31(2)(g) provides:
(2) Right to CONTRIBUTION.
(a) Except as otherwise provided in this act, when two or more persons become jointly or severally liable in tort for the same injury to

person or property, or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
. . . .
(g) This act shall not apply to breaches of trust or of other fiduciary obligation.

**7.** Fla.Stat. 768.31(3)(a) provides:
(3) Pro rata shares.—In determining the pro rata shares of tortfeasors in the entire liability:
(a) Their relative degrees of fault shall be the basis for allocation of liability.