**BEL–BEL INTERNATIONAL CORP., Plaintiff,**

v.

**BARNETT BANK OF SOUTH FLORIDA, N.A., et al., Defendants.**

**No. 89–2510–CIV.**

United States District Court, S.D. Florida.

Aug. 17, 1993.

Frank Nussbaum, Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A., Miami, FL, for plaintiff.

Michael D. Katz, Katz, Barron, Squitero & Faust, P.A., Miami, FL, for defendants Steven Torcise and Sam Torcise.

Martin L. Sandler, Miami, FL, for Growers Packing Co. and Torcises.

Thomas H. Seymour, Kenny, Nachwalter & Seymour, Miami, FL, for Marano.

Vito Strano, pro se.

Michael D. Martin, Lakeland, FL, for Charlie Jones, Lisa Jones, Phillip Jones and J & B Tomato.

Joseph Kissane, Kimbrell & Hamann, P.A., Miami, FL, for Bank One.

Roger G. Hewitt, Harper & Hewitt, Miami, FL, for Thomas L. Campbell.

## ORDER ON MOTIONS TO STAY PROCEEDINGS AND TO DISMISS COUNTERCLAIMS

NESBITT, District Judge.

This cause comes to the Court upon the following motions: (1) Defendants' Steven Torcise and Sam Torcise ("Brothers") Motion to Stay Proceedings; (2) Plaintiff Bel–Bel International Corp.'s ("Bel–Bel") Motion to Dismiss Counterclaim by Defendants Community Bank of Homestead, Kenneth Graves and Vito Strano; (3) Plaintiff Bel–Bel's Motion to Dismiss Counterclaim by the "Brothers".

### Factual and Procedural Background

This action is based on Plaintiff Bel–Bel's alleged security interest in crops grown by Defendant Joseph A. Torcise, individually and d/b/a Joe Torcise Farms and/or Tijodee Farms. Bel–Bel initiated suit on Nov. 13, 1989.[1] The Court dismissed the initial complaint and two subsequent amended complaints for failure to properly plead diversity jurisdiction. The operative pleading at this stage is the Third Amended Complaint.

Bel–Bel is a Panamanian bank whose principal place of business is in New York, N.Y. Bel–Bel alleges: In January and February 1988, Joseph A. Torcise individually and d/b/a Joe Torcise Farms and/or Tijodee Farms executed two promissory notes to Bel–Bel and executed two loans totalling $2.5 million in value. Bel–Bel alleges the loans were secured by Torcise's 1988–89 tomato crop. The security agreements covered the crops and up to $2.5 million in proceeds from the sale of the crops. By agreement between Bel–Bel and

---

1. Besides Joseph Torcise and his farms, defendants included: Codelia Torcise, his wife; Steven and Sam Torcise, his brothers (Brothers); Growers Packing Co. (Growers); Charlie Jones, Lisa Jones and Phillip Jones individually, d/b/a Phillip Jones Farms and J & B Tomato, Inc.; Barnett Bank of South Florida, N.A. and Community Bank of Homestead (Community); the Anthony Marano Co. and Josephine Marano; Kenneth Graves and Vito Strano (Graves and Strano); Thomas L. Campbell; Bank One Marion, Indiana, N.A.

Plaintiffs assert that Growers is an entity owned and/or controlled by Torcise and utilized to sell his tomato crops. Charlie Jones was general manager of Growers. It is alleged that he directed crop proceeds due and owed to Bel–Bel to instead be paid to his children, Lisa and Phillip Jones, or their businesses.

Barnett Bank and Community Bank are alleged depositories of crop proceeds pledged, due and owed to Bel–Bel.

Bank One Marion, Ind. is alleged to have loaned funds to Charlie Jones that were transferred to Torcise, then repaid with crop proceeds due and owed to Bel–Bel.

Anthony Marano Co. and Josephine Marano are alleged to have made loans to Torcise which were then repaid with funds from crop proceeds due and owed to Bel–Bel.

Steven and Sam Torcise, Vito Strano (a stockholder in Community Bank) and Kenneth Graves (attorney for and stockholder in Community Bank) are alleged participants in a scheme to direct loan funds from Community Bank to Torcise, then repay the loans with crop proceeds due and owed to Bel–Bel.

Torcise, the proceeds were to be deposited into designated accounts at Community Bank of Homestead and Barnett Bank of South Florida.[2] Bel–Bel claims it perfected its security interest under Florida law, which was superior to that of any other party's interest.

Bel–Bel claims that Torcise failed to comply with the terms of the loans and promissory notes, but instead engaged in a fraudulent scheme to avoid payment of Bel–Bel's security interest. Some co-defendants are alleged to have participated in some portions of the scheme, others are alleged to have participated in other portions of the scheme. Most pertinent to the motions now before this Court is Bel–Bel's claim that Torcise's 1988–89 tomato crop was sold by defendant Growers and that proceeds which were to be deposited in special, designated accounts at Community and Barnett banks were instead diverted into a "lock box" account controlled by Community. Bel–Bel maintains that after certain payments were made to other secured creditors, 60 percent of the proceeds remaining in the "lock box" account, or $3.5[3] million, was extracted by Community to repay loans made by Community to Defendants Graves, Strano and "Brothers." The other 40 percent of the remaining proceeds are claimed by Bel–Bel to have been used by Torcise in his tomato farming operations.

Bel–Bel further alleges that the money ostensibly loaned by Community to Strano, Graves and Brothers was instead immediately transferred by those defendants to Torcise, that the loans were made to those defendants because Community had reached the regulatory limit of loans it could make directly to Torcise, that Torcise was overdrawn on his Community Bank checking account by approximately $3.5 million, and that those loans were arranged specifically to cover Torcise's overdrafts. Bel–Bel further claims that the loans to Graves, Strano and Brothers were secured by the same 1988–89 tomato crop proceeds Torcise used to secure his $2.5 million in loans from Bel–Bel, and that defendants knew of Bel–Bel's security interest in the crop proceeds when the loans were made.

Shortly after this action commenced, Torcise and Growers on December 8, 1989 sought relief and protection from creditors in U.S. Bankruptcy Court under Chapter 11 of the U.S. Bankruptcy Code. *In re: Growers Packing Company, et al.*, No. 89–16287–BKC–AJC. The bankruptcy court (Cristol, A.J.) approved an Amended Joint Liquidating Plan of Reorganization on March 29, 1991. The plan included appointment of a three-person creditor's committee of unsecured creditors to oversee the plan and authorized Torcise and Growers, as debtors in possession, to maintain adversary proceedings against Community seeking return of the $3.5 million extracted from the "lock box." The debtors' in possession actions against Community, filed Dec. 12, 1990, were based on federal bankruptcy law claims that the $3.5 million paid to Community constituted an unlawful preference and fraudulent conveyance. The adversary proceedings by the debtors in possession against Community were consolidated before U.S. District Court Judge James W. Kehoe, *Growers Packing Co. v. Community Bank of Homestead*, 134 B.R. 438 (S.D.Fla.1991). On June 24, 1992, the debtors in possession recovered a verdict and judgment for the $3.5 million paid to Community, which judgment is currently before the Eleventh Circuit Court of Appeals.

Following bankruptcy court approval of the reorganization plan, Bel–Bel filed a timely complaint objecting to the dischargeability of debt[4], alleging grounds to exclude the obligations due Bel–Bel from the discharge. Unlike the debtors' in possession claims under federal bankruptcy law, Bel–Bel's action against Torcise, Growers, Community, Brothers and the other defen-

---

**2.** Bel–Bel has voluntarily dismissed Barnett from this action.

**3.** Various pleadings have stated this figure to be $3.55 million, though the majority state it to be $3.5 million.

**4.** Adversary Proceeding No. 91–0447–BKC–AJC–A.

dants presently is based on state tort claims, including conversion, unlawful interference in a business relationship and fraud.

On November 4, 1991, The bankruptcy court identified Bel–Bel as a secured creditor and granted Bel–Bel leave from the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362, to pursue its claims against the debtors in possession in this court. The bankruptcy court also stayed Bel–Bel's adversary proceeding regarding dischargeability of the debtors' in possession obligations to Bel–Bel. In its order granting Bel–Bel relief from the automatic stay, the bankruptcy court stated that the Plaintiff had already endured "unconscionable" delay in its efforts to obtain recovery, while the debtors had "had the benefit of the automatic stay" under § 362 for some 20 months. The bankruptcy court noted that while stayed from pursuing its claim against the debtors in possession, Bel–Bel had diligently pressed its claims against the alleged co-tortfeasors in this court. The bankruptcy court further noted that Bel–Bel's complaint to determine the dischargeability of the debt was "well pled and, if proven, would exclude the debt due Bel–Bel from the operation of a discharge." [5]

It is important to note here that Community has previously sought leave from both the bankruptcy court and the district court in the Growers Packing Co. case to join Bel–Bel as an indispensable party. Both courts denied Community's motions for joinder. Community maintained then the same argument it urges now before this Court—that by allowing Bel–Bel to maintain a separate action, it could obtain a double recovery—first receiving a share of one judgment to the debtors in possession if they prevail in their adversary proceeding, then receiving a second judgment for itself if it prevailed in its own separate action before this Court. It is defendants' position that Bel–Bel should be stayed from pursuing this claim until the debtors' in

possession action against Community is resolved. Community claims that if that judgment is affirmed, it will cause Community to return the $3.5 million to the estate, and in turn Bel–Bel can obtain the $2.5 million it claims it is owed from the estate. If that judgment is reversed, Bel–Bel then could re-assert its claim here.

### *Discussion*

Defendants here present a two-pronged argument.

First, in their motion for stay, Brothers argue that Bel–Bel's recovery *must* come from the property of the estate for the following reasons: a) Bel–Bel accepted the jurisdiction of the bankruptcy court when it agreed to confirmation of the reorganization plan and consented to the adversary proceeding by the debtors in possession, thereby waiving its right to pursue its claim here; b) Debtors in possession and Bel–Bel seek recovery of the same identical res—the $3.5 million Community extracted from the lock box account to repay its loans to Brothers, Graves and Strano; and c) If the $3.5 million judgment is affirmed, that money would return to the estate, from which Bel–Bel could then obtain recovery.

Second, in their motion for declaratory relief, Brothers argue that the judgment in the adversary proceeding should be *res judicata* to Bel–Bel's claim here, and should collaterally estop Bel–Bel from maintaining this claim.

Community opposes Brothers' motion for stay but presents a similar argument—that Bel–Bel is entitled to only one recovery. Community seeks a declaratory judgment here as to who it should pay, the debtors in possession or Bel–Bel, in the event the adversary proceeding judgment is affirmed and a judgment in favor of Bel–Bel is entered by this court.

The court finds the defendants' arguments to be unpersuasive for several reasons. The debtors in possessions' adver-

---

5. See, *In re: Growers Packing Company, et. al.,* No. 89–16287–BKC–AJC, Order Granting Relief from Stay, Nov. 4, 1991.

sary proceeding against Community Bank sought return of the $3.5 million received by the Bank. The action alleged that the payments violated federal bankruptcy law prohibitions against unlawful preference payments and fraudulent conveyances. Bankruptcy law limits unsecured creditors' rights to recovery of preferences and fraudulent conveyances to the funds *actually received* unlawfully by the adversary party. The $3.5 million is the limit of funds available to all unsecured creditors seeking recovery through an allowed claim under the bankruptcy reorganization plan. But the $3.5 million is *not* the full amount of money involved in the alleged fraudulent lock box scheme. The total amount alleged to have been diverted by Torcise to the lock box account is $7.1 million.

Bel–Bel's cause of action is not identical to that of the debtors in possession. Bel–Bel is proceeding here on secured and unsecured claims, alleging conversion, conspiracy, fraud, intentional interference with a business relationship, intentional impairment of a crop lien and intentional interference with a business or contractual relationship. This court dismissed some of the secured claims in an order dated February 12, 1993, but denied motions to dismiss other secured claims and the unsecured claims. These are not claims under federal bankruptcy law, but are state common law claims for intentional torts, the elements of which include the existence of a legal duty from the defendant to the plaintiff, a wilful breach of that duty by the defendant, and damage to the plaintiff as a proximate result of that breach. Recovery under these theories does not have as an element that any of the co-tortfeasors have received any money, only that they intentionally participated in the tort.

■ Additionally, the doctrine of joint and several liability applies to the defendants because Fla.Stat. § 768.81, which codifies the doctrine of comparative fault in assessing damages against joint tortfeasors in negligence actions, specifically excludes intentional torts. *See,* Fla.Stat. § 768.81(4)(b). *See also, Conley v. Boyle,* 570 So.2d 275 (FSC 1991). (Joint and sever-

al liability is favored in limited situations set forth by statute). *See also, Williams v. Hirotake, Ltd.,* 931 F.2d 755 (11th Cir. 1991). (Under Florida's comparative fault statute, where a tortfeasor's fault is greater than or equal to that of plaintiff's, such tort-feasor is jointly and severally liable for *economic* damages). Where the doctrine of joint and several liability applies, a joint tortfeasor such as Community can be held liable for the full amount of damages suffered as a result of the fraud alleged to be some 7.1 million dollars. Of that $7.1 million, Bel–Bel has a $2.5 million secured interest under Florida common law and the Uniform Commercial Code. There is no threat of a double recovery because the two theories of recovery are different and recovery is not being sought against Community for more than its full share of potential liability. The Bank is alleged to be involved in a fraudulent manipulation of funds which gives rise to two separate causes of action by two separate plaintiffs, each with a legal interest in those monies. The debtors in possession claims in the Growers Packing Co. case are strictly pursuant to bankruptcy code claims of preference and fraudulent conveyance. Bel–Bel's claims here are pursuant to the state law of secured interest and as a general creditor pursuant to the bankruptcy code.

■ Neither are Brothers being subjected to paying a double recovery or to pay more than the total limit of their liability. Under Florida law, as alleged co-tortfeasors they also are jointly and severally liable for the full extent of the alleged fraud—$7.1 million. And under Florida law § 768.31(2)(c) and (g), there is no right of contribution for intentional torts or for breaches of trust or other fiduciary obligation. *See, Insurance Co. of North America v. Poseidon,* 561 So.2d 1360, 1361 (Fla. 3rd DCA 1990). (Quoting the statute: "There is no right of contribution in favor of any tortfeasor who has intentionally (willfully or wantonly) caused or contributed to the injury ..."). *See also, In re Lugo: Sun Bank v. Lugo,* 140 B.R. 917 (Bkrtcy.S.D.Fla.1992) (The Florida statute creating a right of contribution among joint

tortfeasors expressly excludes breaches of trust or of other fiduciary obligation).

■ This court is not persuaded by Defendant Brothers' contention that Bel–Bel's acceptance of the plan of reorganization and its agreement that the debtors in possession file an adversary claim on federal bankruptcy law grounds constitutes a waiver of its right to pursue its own claim here. First, a creditor's approval of the debtor's Chapter 11 discharge plan does not operate to discharge guarantors, co-signors or co-debtors of their liabilities. See, *Union Carbide Corp. v. Newboles,* 686 F.2d 593, 595 (7th Cir., 1982). (The mechanics of administering the federal bankruptcy laws, no matter how suggestive, do not operate as a private contract to relieve co-debtors of the bankrupt of their liability). *See also, St. Regis Paper Co. v. Quality Pipeline,* 469 So.2d 820, 824 (Fla. 2nd DCA, 1985) (Because an entity other than the bankrupt debtor is not relieved from any of its liabilities on the debt, the rights of a bankruptcy creditor against such entity are not affect on any theory of waiver, estoppel, merger, novation, election of remedies or other theory …).

Second, nothing in the plan precludes Bel–Bel from pressing its claims outside the plan against co-tortfeasors of the debtors not involved in the reorganization. The bankruptcy court in fact noted in November 1991 that Bel–Bel, while participating diligently in the ponderous proceedings against the debtors in bankruptcy, had never stopped asserting its separate claims against the joint tortfeasors in this court. This view is supported by Title 11, U.S.Code § 524(e) ("…discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.") and case law. *See, Sandy Ridge Development Corp. v. Louisiana National Bank; Matter of Sandy Ridge Development Corp.,* 881 F.2d 1346, 1351 (5th Cir.1989) (The Bankruptcy Code and confirmation of plan cannot operate to release nondebtor guarantors). *See also, Owaski v. Jet Florida Systems, Inc. (In re: Jet Florida Systems, Inc.)* 883 F.2d 970, 973–974 (11th Cir.1989) (The § 524(a)

injunction does not act to enjoin a creditor from taking action against another who might also be liable to the creditor).

Third, the bankruptcy court in the November 1991 order gave Bel–Bel leave from the automatic stay provisions of § 362 to pursue its claims against the debtors. That court further noted that, if Bel–Bel prevailed, the judgment would not be subject to discharge. In so doing, the bankruptcy court placed Bel–Bel in a different position than unsecured creditors who must try to maximize the amount available for their recovery in bankruptcy. Since Bel–Bel 20 months ago was given relief from the automatic stay to pursue its claims against the debtors before this Court, it should not now be prevented from pursuing the same claims against the debtors' co-tortfeasors before this court.

■ Finally, we consider Brothers' and Community's arguments that the judgment rendered in the adversary proceeding before Judge Kehoe is res judicata to this action and that Bel–Bel is thereby estopped from pursuing its claims in its action before this court. This court does not find those arguments meritorious.

First, the action before this court involves different parties than were involved in the adversary proceeding. Brothers, Graves and Strano, are parties here but are not parties in the adversary proceeding before Judge Kehoe. The debtors in possession are named defendants in this matter, but were party plaintiffs in the adversary proceeding. Thus, Bel–Bel is not in privity with nor can it be adequately represented by the creditors' committee pursuing the debtors in possession claims in the adversary proceeding. Second, the parties have conflicting interests in each matter. Bel–Bel's interests as a secured creditor in the action here are adverse to those of the unsecured creditors represented by the debtors in possession. Full payment to Bel–Bel of its $2.5 million secured interest would greatly reduce the remaining funds available for distribution to unsecured creditors, which raises an apparent conflict. Third, as discussed, Bel–Bel's action here involves separate state tort claims which

are not dependent on or limited to recovering money actually received by the co-tortfeasors. The debtors in possession in the adversary proceeding raised issues involving bankruptcy law claims of preference and fraudulent conveyance and are limited to recovering payments actually made by the debtors to Community Bank.

### Summary

For the reasons stated in this order and, after due consideration, it is ORDERED:

1) Defendants Brothers' Motion to stay proceedings is denied;

2) Plaintiff Bel–Bel's Motion to dismiss Counterclaim by Defendants Community Bank, Graves and Strano is granted;

3) Plaintiff Bel–Bel's Motion to Dismiss Counterclaim by Defendants Brothers is granted.

DONE and ORDERED.