622 So.2d 142 (1993)
Richard Michael WHITLOCK, As Personal Representative of the Estate of Roxanne Marie Whitlock, Decedent, Appellant,
v.
Stephan E. DRAZINIC, M.D. and Stephan E. Drazinic, M.D., P.A., Appellee.
No. 92-371.
District Court of Appeal of Florida, Fifth District.
August 6, 1993.
*143 Murray Sams, Jr. and John J. Spiegel, Miami, for appellant.
Neal D. Huebsch, Eustis, for appellees.
EN BANC
HARRIS, Chief Judge.
Roxanne Marie Whitlock experienced extensive bleeding from a tubal pregnancy. Her gynecologist, Dr. Cambare, admitted her to Waterman Medical Center and brought in Dr. Stephan E. Drazinic, appellant herein, to perform surgery. Because Mrs. Whitlock had lost about four pints of blood, Dr. Cambare ordered typing and cross-matching of four units of blood which Mrs. Whitlock subsequently received. The first two units were administered after surgery, at which time Dr. Cambare ordered two transfusions, one at 10:45 p.m. and the other at midnight. Dr. Drazinic later ordered two additional transfusions, one at 6:45 a.m. and the other at 9:30 a.m. Mrs. Whitlock responded well and was released from the hospital three days after her surgery. At that time, the surgery was successful and all appeared well.
Unfortunately, one pint of the transfused blood was infected with the HIV virus. Although the evidence is less than conclusive, for the purpose of this opinion, we will accept appellant's contention that the third unit contained the tainted blood. Three years later, Mrs. Whitlock died from the complications of AIDS.
Before her death, Mrs. Whitlock and her husband, appellant herein, filed suit against Waterman Medical Center, Dr. Cambare, and Dr. Drazinic. The trial court entered summary judgment for the medical center and Dr. Cambare. Subsequently, this court affirmed Dr. Cambare's summary judgment. Whitlock v. Cambare, 586 So.2d 1067 (Fla. 5th DCA 1991). Dr. Drazinic's pleadings were not ripe for a ruling at the time of the earlier summary judgment hearing so his conduct relating to this most unfortunate matter was considered separately.
Initially, the assigned trial judge denied summary judgment to Dr. Drazinic. However, during the course of the proceedings, as is often the case, a new trial judge was assigned to handle the proceedings. An amended motion for summary judgment was filed and the court granted a final summary judgment in favor of Dr. Drazinic. It is this summary judgment that is now on appeal. We affirm.
The only issue raised by appellant is whether a successor trial judge has the authority to grant a summary judgment when the originally assigned judge had refused to do so. We agree with the court in Bettez v. City of Miami, 510 So.2d 1242, 1242-43 (Fla. 3d DCA 1987):
First, we reject the plaintiff's contention that the trial court had no authority to entertain the defendant City of Miami's *144 motion to reconsider the trial court's prior interlocutory ruling denying the defendant's motion for summary judgment, and to thereafter enter a summary judgment for the defendant. It is well settled in this state that a trial court has inherent authority to reconsider, as here, any of its interlocutory rulings prior to the entry of a final judgment or final order in the cause.
And if the original trial judge could enter a summary judgment after first declining to do so, we again agree with the Third District:
While a case is pending, a second circuit judge properly assigned to the case can vacate or vary interlocutory orders made earlier therein by another judge, the same as could be done by the latter.
Deemer v. Hallett Pontiac, Inc., 288 So.2d 526, 527 (Fla. 3d DCA), cert. denied, 298 So.2d 416 (Fla. 1974).
On the merits, any liability attaching to Dr. Drazinic could arise only from the action he took in ordering transfusion of the third and fourth units of blood, one of which was infected. Yet it is undeniable that Mrs. Whitlock was not injured because she received these last two units of blood or because of the manner in which the transfusions were performed. She was injured, quite simply, because one of the units of blood was tainted.
To hold Dr. Drazinic responsible for the tainted blood in this case would be unfair and unwise. It would be unfair because Dr. Cambare, not Dr. Drazinic, initially ordered the four units of blood and requested that they be typed and cross-matched, presumably in preparation for Mrs. Whitlock's transfusions. Although we do not fault Dr. Cambare, we note that her involvement with this particular blood was greater than Dr. Drazinic's. Yet she has been discharged from all liability.
Further, to hold Dr. Drazinic responsible in this case would foster extremely unwise public policy. At present, doctors know that if their care falls below appropriate standards, they will be held liable. To find liability in the instant case would expand this basic rule to include not only instances where doctors have not provided appropriate care but also cases where they have taken extra care (more than minimally required) and through no fault of their own injury results.
Appellant offered the affidavit of Dr. Belefer to support his contention that the additional transfusions were not medically necessary.[1] But this affidavit does not indicate that such transfusions, in and of themselves, were medically unsound nor does it dispute the contention that the additional blood would guard against shock. We hold that this affidavit, as a matter of law, was insufficient to create an issue of material fact as to Dr. Drazinic's liability for Mrs. Whitlock's injuries resulting from the tainted blood.
This action should have been, but was not, brought against the entity responsible for the product which caused the injury  the supplier of the blood. Instead, it was brought against the doctor who ordered the transfusion in which the blood was used. To find liability in this case would be to make the doctor an insurer against the negligence of those supplying the medical products used to increase the likelihood of success of surgery or to speed recovery. We are not willing to go that far.[2]
AFFIRM.
DAUKSCH, COBB, W. SHARP, PETERSON, DIAMANTIS and THOMPSON, JJ., concur.
GOSHORN and GRIFFIN, JJ., concur in result only.
NOTES
[1] His affidavit stated:

d. No blood was required to stabilize [Whitlock] . ..
e. There was obviously no emergency in transfusing the blood in order to stabilize the vital signs.
[2] Other courts also have refused to extend medical liability this far. See Hine v. Fox, 89 So.2d 13 (Fla. 1956); Hoff v. Zimmer, Inc., 746 F. Supp. 872 (W.D.Wisc. 1990).