656 So.2d 494 (1995)
James M. STEPP, Jr., and Alison D. Stepp, Appellants,
v.
STATE FARM FIRE & CASUALTY COMPANY, Appellee.
No. 93-2023.
District Court of Appeal of Florida, First District.
March 17, 1995.
Rehearing Denied July 18, 1995.
Michael R. Yokan of Kattman & Eshelman, P.A., Jacksonville, for appellants.
Jack W. Shaw, Jr., Harris Brown and Reginald Luster of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, P.A., Jacksonville, for appellee.
PER CURIAM.
This is an appeal of a final summary judgment in which the trial court determined that the undisputed facts showed the actions of the insured decedent, Billy Joe Herald ("Herald"), in shooting appellant James Stepp ("Stepp") were not an accident and thus did not constitute an occurrence under Herald's homeowner's insurance policy, and that the policy exclusion as to the actions of an insured which cause bodily injury which are either expected or intended or are the result of willful and malicious acts of the insured was applicable, thus there was no coverage. We affirm.
Herald shot Stepp while Stepp was serving as a reserve police officer in Jacksonville. According to Stepp's deposition, upon being informed that Herald appeared to be driving while intoxicated, he stopped Herald as Herald drove his automobile away from a convenience store. Several unmarked police cars followed behind Stepp. After Herald exited the car, Officer Stevens, who was dressed in plain clothes (and apparently had been driving *495 one of the unmarked cars) took over the investigation. Eventually, Stevens placed Herald in the back seat of Stepp's patrol car. Stepp did not frisk Herald because he thought Stevens had done so. Stepp did not handcuff Herald, who had been cooperative. Stepp then sat in the front seat of his patrol car waiting for a beat car to come and pick up Herald. Herald asked Stepp if he "was going to take him home or what." Stepp said no, that they were waiting for a beat car and that officer would decide what to do. About thirty seconds later Stepp heard a loud noise and felt pain in his head, and his front windshield shattered. Stepp exited the vehicle, drew his firearm, and took cover at the corner of the convenience store. Realizing that he was bleeding, he went inside the store and asked the clerk to call 911. Stepp did not return to the patrol vehicle. He was informed later that Herald had shot himself about an hour after he shot Stepp, and that Herald had died. Stepp later learned that Herald had a gun holster in his boot. There were no other witnesses to the shooting of Stepp.
Stepp sued Herald's estate on several theories, including negligence, alleging that while seated in the rear of the patrol car, Herald had carelessly handled the firearm, which discharged, permanently injuring Stepp. Subsequently, State Farm, which issued Herald's homeowner's insurance policy, sued for a declaratory judgment as to coverage and its duty to defend. Early in the proceedings, the two suits were consolidated for discovery only. Judge Nachman denied State Farm's motion for summary judgment in the suit for declaratory judgment, finding that State Farm had not shown that there were no genuine issues or that, as a matter of law, the shooting was intentional and not the result of negligence. The trial court also denied State Farm's motion for summary judgment, and granted Stepp's motion for partial summary judgment, on the question of State Farm's duty to defend. This court denied certiorari review of that issue.[1]
Subsequently, the cases were consolidated for trial. State Farm again moved for summary judgment. In addition to the deposition testimony of Stepp, which had formed the basis of the first motion for summary judgment, State Farm submitted the results of Herald's autopsy, which showed a blood alcohol level of .37 at the time of his death; however, the two motions for summary judgment were virtually identical insofar as the determinative issues were concerned. Judge Beverly granted summary final judgment in favor of State Farm, finding as indicated above. On appeal the Stepps challenge the correctness of the trial court's ruling on the motion for summary judgment and the propriety of its ruling contrary to the predecessor judge.
The operative portion of the homeowner's policy provides:
Section II  Liability Coverage
Coverage L  Personal Liability
If a claim is made or suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
1. Pay up to our limit of liability for the damages for which the insured is legally liable; and
2. Provide a defense at our expense by counsel of our choice.
"Occurrence" is defined as used in Section II of the policy means "accident ... which results in ... bodily injury ... during a policy period."
Section II  Exclusions
1. Coverage L and Coverage M do not apply to:
(a) Bodily injury or property damage:
(1) which is either expected or intended by the insured;
or

*496 (2) to any person or property which is the result of the wilful and malicious acts of an insured.[2]
Appellants contend that the record is silent as to what caused Herald's gun to discharge, and therefore the trial court erred in concluding that the undisputed material facts entitle State Farm to summary judgment. Further, appellants contend the trial court implicitly held that the discharge of the firearm was an intentional act not covered by the policy, and as such, the decision is contrary to the recent opinion in Prudential Property and Casualty Insurance Co. v. Swindal, 622 So.2d 467 (Fla. 1993). Finally, appellants contend the trial court erred reversibly by overturning the ruling of a predecessor judge. We disagree with each of appellants' contentions.
"[T]he burden to prove the non-existence of genuine triable issues is on the moving party," Holl v. Talcott, 191 So.2d 40, 43 (Fla. 1966). "If the pleadings, depositions, answers to interrogatories, admissions, affidavits and other evidence in the file raise the slightest doubt upon any issue of material fact than a summary judgment may not be entered." Connell v. Sledge, 306 So.2d 194, 196 (Fla. 1st DCA 1975), cert. dismissed, 336 So.2d 105 (Fla. 1976). Appellants argue there is no evidence that the shooting was not an accident, and no evidence that Herald expected or intended to cause injury to Stepp, thus State Farm could not prevail on summary judgment.
Appellants admit that the record is silent as to what caused Herald's firearm to discharge when Stepp was shot in the head, and that Stepp's deposition testimony is the only evidence of record as to how the shooting occurred. It is also apparent in this case that, because there were no witnesses other than Stepp and Herald, and Stepp has presented his recollection of the event, no additional substantial evidence as to how the shooting occurred is available. Appellant argues the fact that Herald appeared peaceful and also extremely intoxicated would permit a jury inference that the shooting occurred by accident.[3] In response to questioning at oral argument, appellants mentioned the possibility of presenting evidence as to the trajectory of the bullet as a basis for inferring that Herald did not intend to fire the gun directly at Stepp; however, we agree with appellee that, in this case, such inferences would necessarily be based impermissibly on speculation and conjecture.
We are cognizant of the rule that the plaintiff does not have to prove its case in response to a motion for summary judgment, Department of Transportation v. Spioch, 642 So.2d 788 (Fla. 1st DCA 1994) ("the movant must carry the burden of negating the existence of any basis of liability asserted against it; the plaintiff is not required to prove its case in response to a motion for summary judgment"). However, it is also the case that "to fulfill his burden, the movant must offer sufficient admissible evidence to support his claim of the nonexistence of a genuine issue... . If he succeeds, then the opposing party must demonstrate the existence of such an issue either by countervailing facts or justifiable inferences from the facts presented." DeMesme v. Stephenson, 498 So.2d 673, 675 (Fla. 1st DCA 1986) (emphasis supplied). The movant is not required "to exclude every possible inference from other evidence that may have been available." Id. We believe appellee, as the movant, met this requirement; under the unique circumstances of this case, it is not possible to reasonably infer from the facts available that the shooting was an accident. Thus there is no genuine triable issue as to whether an accident occurred within the policy coverage, and the trial court did not err in granting final summary judgment for State Farm. See generally Cassel v. Price, 396 So.2d 258 (Fla. 1st DCA 1981) (court concluded no view of the facts afforded reasonable conclusion of negligence by defendant; and summary judgment "is a proper and necessary means for accomplishing the purpose of terminating litigation short of a *497 jury trial, which satisfies the constitutional `right of access' to the courts as a means of resolving civil disputes").
For a similar reason, we believe this case is distinguishable from Swindal. In Swindal, Castellano, the insured, who also did the shooting, was available to be a witness to the events surrounding the shooting, although the victim was unable to testify. A genuine issue remained in Swindal as to whether the gun discharged accidentally or intentionally, and there was evidence from which the trier of fact might conclude the gun was accidentally discharged, i.e., Castellano's testimony that he did not intend to shoot Swindal, but that the gun accidentally discharged during a struggle.[4] There is no such evidence in the present case, nor can any be presented, from which a jury might conclude the gun was accidentally discharged.
Appellants also argue that Judge Beverly could not grant summary judgment when Judge Nachman had refused to do so, based on Globe Aero Ltd, Inc. v. Air & General Finance Ltd., 537 So.2d 628 (Fla. 3d DCA 1988), in which the district court said that where the original trial judge entered a final default judgment, a successor judge could not review and reverse on the same facts the final order and decrees of his predecessor. In Whitlock v. Drazinic, 622 So.2d 142 (Fla. 5th DCA 1993), however, the court said a successor judge could grant final summary judgment on an amended motion for summary judgment where the previous judge had refused to grant summary judgment. The district court's theory was that if the original judge can reconsider and vary its own interlocutory orders up until the time final judgment is entered, i.e., could grant summary judgment after initially declining to do so, then a successor judge could also vacate or vary interlocutory orders. The instant case is more similar to Whitlock than to Globe, since it involves an initial interlocutory ruling denying summary judgment. We conclude the trial judge in the present case did not err in granting summary final judgment.
AFFIRMED.
JOANOS and WOLF, JJ., concur.
BENTON, J., dissents with opinion.
BENTON, Judge, dissenting.
A successor judge may revisit interlocutory orders entered in a case to which she succeeds before final judgment has been entered. Whitlock v. Drazinic, 622 So.2d 142 (Fla. 5th DCA 1993) (en banc) (affirming summary judgment entered by successor judge after predecessor judge had denied motion for summary judgment).
But entry of summary judgment is never appropriate in the absence of "sufficient admissible evidence to ... [demonstrate] the nonexistence of a genuine issue [of fact]." DeMesme v. Stephenson, 498 So.2d 673 (Fla. 1st DCA 1986).
A motion for summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fla.R.Civ.P. 1.510(c). If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper. Crandall v. Southwest Florida Blood Bank, Inc., 581 So.2d 593 (Fla. 2d DCA 1991); Gomes v. Stevens, 548 So.2d 1163 (Fla. 2d DCA 1989).
Grissett v. Circle K Corp., 593 So.2d 291, 293 (Fla. 2d DCA 1992). The factual issue here is whether Mr. Herald intended or expected to do Officer Stepp bodily harm.
The fact "that the record is silent [i.e., inconclusive] as to what caused Herald's firearm to discharge," ante 496, is the very reason that the injured policeman is entitled *498 to have a jury decide whether, as he contends, it was accidental. Recently our supreme court held that summary judgment exonerating an insurance company under the same type of policy exclusion at issue here had to be reversed where the insured
approached Swindal's car with his loaded handgun, safety off, finger on the trigger. He reached inside Swindal's car with both hands to grab what he thought was a gun. Swindal then grabbed [the insured's] gun and, in the struggle, the gun fired....
Prudential Property & Casualty Ins. Co. v. Swindal, 622 So.2d 467, 469 (Fla. 1993). While the insured in Swindal "maintain[ed] that the gun accidentally discharged," at 469, and death has forever silenced Mr. Herald, the evidence surrounding the discharge of this gun is no less ambiguous.
An autopsy report revealed that Mr. Herald had a blood alcohol level of .37% at the time of his death. In contrast to the belligerent insured in Swindal, he was "very polite, very cooperative, very apologetic." Officer Stepp testified on deposition:
From what I could see in the front of my patrol car, he was trying to do everything the officers told him to do and was laughing about it and just, you know, no resistance, no argumentative points.
"[I]nsureds whose insane acts result in ... otherwise covered losses are not excluded from coverage by reason of an intentional acts exclusion." Brown v. The Travelers Insurance Co., 641 So.2d 916, 922 (Fla. 4th DCA 1994). The same rule should apply to those they injure.
For some time before the shot, Officer Stepp detected no movement, and assumed that Mr. Herald had passed out again. Except for the shot itself, nothing he detected in Mr. Herald's behavior evinced any intention to do Officer Stepp bodily harm. Officer Stepp's nonchalance as he sat within reach of Mr. Herald, although with his back to him, is eloquent evidence of this fact. Officer Stepp's deposition is the main source of record evidence about events that night. Nothing of record disproves the factual allegation that the gunshot was accidental.
The decision in Gulf Life Ins. Co. v. Nash, 97 So.2d 4 (Fla. 1957) is instructive. There
the insured attempted to frighten his friends by holding a gun to his own chest and pulling the trigger three times, believing all three chambers to be empty. The insured was killed when the gun discharged on the third trigger pull. The insured's "act" in pulling the trigger and attempting to frighten his friends clearly was intentional, but the insured's injury was deemed accidental within the meaning of the special accident insurance policy because the insured never intended to cause a fatal injury even though the shot flowed from an intentional act. Accordingly, the Court held the injury was covered by the policy in which the insurer had agreed to pay if the insured should meet his death by accidental means.
Swindal, at 470. Dissenting in Nash, Justice Thomas contended
that the injury should be excluded from coverage on the ground that the injury was the foreseeable consequence of a "dangerous, foolhardy act, and although the result was not intended, the means were deliberate as distinguished from accidental." 97 So.2d at 7 (Thomas, J., dissenting in part).
Swindal, at 470. Under Nash, not even evidence of a dangerous, foolhardy and deliberate act on Mr. Herald's part would warrant summary judgment. On the authority of Swindal, Nash, Stuyvesant Ins. Co. v. Butler, 314 So.2d 567, 570 (Fla. 1975) and Poole v. Travelers Ins. Co., 130 Fla. 806, 814, 179 So. 138, 141 (1937), I respectfully dissent from affirmance of a summary judgment predicated on much less.
NOTES
[1] The order denying certiorari review stated simply that the court was "unable to conclude that the order which is the subject of the petition constitutes a clear departure from the essential requirements of law, resulting in a miscarriage of justice which could not be remedied by appeal after the entry of a final judgment."
[2] Appellants represented to this court that this excerpt from the policy is correct and is the only evidence of record of what the policy states.
[3] "The words `accident' and `accidental,' as used in insurance contracts, mean that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual, and unforeseen." 31 Fla. Jur.2d "Insurance" § 680.
[4] The central legal question in that case was whether an intentional injury exclusion in a homeowner's policy excluded "coverage for bodily injuries sustained where the insured committed an intentional act intending to cause fear, but bodily injuries may have been caused accidentally and were not expected or intended by the insured to result." The supreme court answered that question in the negative.