223 So.2d 553 (1969)
Marie McDONALD, Appellant,
v.
E.I. FORD, Appellee.
No. 68-352.
District Court of Appeal of Florida. Second District.
June 4, 1969.
Robert F. Nunez, St. Petersburg, for appellant.
Edward M. Waller, Jr., of Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, for appellee.
HOBSON, Acting Chief Judge.
Plaintiff-appellant, Marie McDonald, appeals a final judgment entered pursuant to the trial court's granting of defendant-appellee's motion for directed verdict.
This appeal involves an action for personal injuries received by Marie McDonald which she alleged were caused by the negligent conduct of Mr. Ford, the defendant-appellee herein, while she was a social guest in his home and while he attempted to make love to her.
The incident complained of occurred in the early morning hours of April 26, 1965, in a home owned by the defendant. Prior to this date, plaintiff and defendant had seen each other socially and on occasion even contemplated getting married. They had spent the evening prior to the incident in question together, during which time defendant consumed several alcoholic drinks. In the early morning hours which followed the two of them went to defendant's *554 home where plaintiff agreed to prepare coffee for them. While the coffee was heating, plaintiff went into the livingroom where she knelt before a stereo set sorting through some records which were stacked on the floor. Defendant had gone to another part of the house to remove his overcoat and tie. While plaintiff was still looking through the records, defendant came up behind her, laughingly embraced her, and though she resisted, kissed her hard. As defendant was hurting plaintiff physically by his embrace, plaintiff continued to struggle violently and defendant continued to laugh and pursue his love-making attempts. In the process plaintiff struck her face hard upon an object that she is unable to specifically identify and in so doing injured her jaw. When she was able to break away, she grabbed her purse, left his house and went home.
At the close of plaintiff's case the defendant moved for a directed verdict on the ground that plaintiff's proof conclusively showed a battery had been committed and that this showing precluded submission of the case to the jury on the issue of negligence as charged in the complaint.
The lower court in granting the motion for a directed verdict in favor of the defendant stated:
"THE COURT: It's my finding in this case that I'm going to grant this motion for a directed verdict. I feel that if this case has any basis in fact, it is in the basis of an intentional tort, due to the testimony of the plaintiff in this case, and that there is nothing to submit this case to the jury on the negligence count."
At trial, Marie McDonald's testimony on the issue of the negligence of Mr. Ford was as follows:
"So I knelt on the floor, and I was picking out one more record to put on, when Mr. Ford came back into the room, and I didn't pay any attention at first, because I was trying to pick out a record, till I heard him laugh, and he grabbed ahold of me and he crushed me so hard  he's so strong and big, and  and I'm not so big, and I tried to push away from him, and the harder I struggled to get away from him, trying to tell him that he was hurting me, the harder he pushed me to him, and he kissed me real hard. He came down on me so hard, and, of course, I was struggling. We were bending and twisting, and something banged me awfully hard on my face, and as soon as I could get free, I grabbed my pocketbook and left.
Q Mrs. McDonald, he was in fact hurting you as he squeezed you?
A Yes, sir.
Q And you say that you tried to pull away when he was squeezing you there?
A Yes, I tried to push away, and the harder I tried to push, the more he tried to get hold of me, the more he tried to kiss me, and we were bending and twisting and turning around, and I was pushing and shoving, and he was so strong, and I just  I don't know what happened, but I was just  he was too strong on me, you know, I just  you just  I was just banged and bumped all over, but my face was just  just hurt terribly.
Q This happened while he was trying to kiss you and you were trying to get away?
A Yes, sir."
On cross examination, Marie McDonald testified as follows:
"A ____ Mr. Ford came into the room while I was kneeling down, and I didn't pay much attention, you know, he just walked in, was off to the side of me here, and I heard a noise behind me, and I sort of half got up to look around. He was laughing and he grabbed ahold of me, and he just crushed me when he grabbed ahold of me.

*555 Q What did you say when he grabbed hold of you?
A Well, I tried to push away, you know, I tried to say, `Let go of me.' I suppose I said that, and he just brought his mouth down real hard on my face and kissed me, and the harder I struggled to get away, the harder he held me, and he's extremely strong, and the more I pushed and bended and twisted to get away from him, the more he kept pulling me toward him and crushing me against him, and we struggled and struggled, and I got bumped and  until I could get away from him.
Q While you were struggling, were you knocked to the floor at any time?
A I was bent over, and we were struggling so hard, I don't know whether I was knocked to the floor or whether 
Q You say you were bent over this way struggling?
A Yes, we were struggling.
Q And where was he, in back of you or in front of you at this time?
A Well, he had got to one side, and I twisted to one side, and I don't know whether my jaw could have hit on his knee or his elbow or the side of the stereo. It was a fierce struggle. I was trying to get away from him. He didn't realize that he was crushing me so hard. He was laughing and I was struggling to get away from him."
In view of the above testimony, it is clear that what actually occurred here was an assault and battery. The initial stages of this incident did not constitute assault and battery as "an assault is an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt. The essential element of an assault is the violence offered, and not actual physical contact," and "a battery is defined as an unlawful touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof. The degree of force used is immaterial, except upon the question of damages." 3 Fla.Jur., Assault and Battery, § 3.
Dean Prosser has further described an action for battery in the following terms (Prosser, Law of Torts, 35 [3d ed. 1964]):
"The gist of the action for battery is not the hostile intent of the defendant, but rather the absence of consent to the contact on the part of the plaintiff."
Specifically, and more helpful with regard to the instant case, Prosser asserts that the defendant may be liable for battery "where an unappreciative woman is kissed without her consent." And, further, Prosser recognizes that:
"Taking indecent liberties with a woman without her consent is of course a battery."
In the latter stages of this incident when plaintiff tried to free herself and get away, the conduct on defendant's part, by definition, became assault and battery.
The parties have not cited, nor has our research disclosed any Florida case directly on point. However, the Court of Appeals of Ohio in Williams v. Pressman, 113 N.E.2d 395 (Ohio App. 1953) held at page 396:
"* * * An assault and battery is not negligence for such action is intentional, while negligence connotes an unintentional act."
As plaintiff sued on a negligence theory, the lower court must be and hereby is
Affirmed.
PIERCE and McNULTY, JJ., concur.