454 So.2d 10 (1984)
FEDERATED DEPARTMENT STORES, INC. D/B/a Burdines, Appellant,
v.
Jane DOE and John Doe, Her Husband, and Equity Properties and Development Company, Inc., Appellees.
EQUITY PROPERTIES AND DEVELOPMENT COMPANY, INC., Appellant,
v.
Jane DOE and John Doe, Her Husband, Appellees.
Nos. 83-1286, 83-1308.
District Court of Appeal of Florida, Third District.
July 17, 1984.
Rehearing Denied September 7, 1984.
*11 Magill, Reid & Lewis and Fred Lewis, Miami, for appellant Federated Dept. Stores, Inc., d/b/a Burdines.
Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane and Richard A. Sherman, Miami, for appellant Equity Properties and Development Co., Inc.
Kathleen Phillips, Joel Lumer, Miami, Neil Chonin, Coral Gables, for appellees Jane Doe and John Doe, her husband.
Before HUBBART, BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Federated Department Stores, Inc., d/b/a Burdines [Burdines] and its co-defendant Equity Properties and Development Company, Inc. [Equity] appeal a judgment entered following a jury verdict which found them liable for the damages suffered by the plaintiff, Jane Doe, who was abducted by a third party from a parking garage owned by Equity and adjacent to Burdines. The jury apportioned liability to Equity and Burdines 85% and 15% respectively. We affirm the judgment of the trial court with respect to Equity but, for the following reasons, reverse the judgment entered against Burdines.
Jane Doe drove her automobile into the parking garage owned and maintained by Equity at the 163rd Street Shopping Center at 11:15 a.m., on a weekday morning, with the intention of doing business at Burdines. As soon as she parked her car and opened the door, an armed man accosted her, drove her to a remote location and sexually assaulted and robbed her. Doe was eventually released and her car was found several days later with two dead bodies in the trunk.
At trial Doe introduced police records covering the two prior years of reported crimes at the shopping center including four armed robberies. Doe also presented an expert who testified that the shopping center's security plan was not within a reasonable standard of care. The expert also was asked whether Burdines acted negligently in coordinating the security plan with the shopping center. Counsel for Burdines objected to the question on the ground that there was no evidence that Burdines had responsibility for security outside its store premises. The trial court overruled the objection and allowed the expert to testify that "they [Burdines and Equity] are basically covering the same territory and they have virtually the same responsibilities."
At the conclusion of the plaintiff's case Burdines moved for a directed verdict on the ground that as a lessee of a store in the *12 shopping center it owed no duty to keep the shopping center common areas, such as the parking lot, secure. Burdines' counsel argued that under the lease between Burdines and Equity, Equity had the sole responsibility for maintaining and policing the parking area. The trial court denied Burdines' motion for directed verdict relying upon Combs v. Aetna Insurance Co., 410 So.2d 1377 (Fla. 4th DCA 1982).
Combs held that "control [of a common parking lot] is not the sole basis for liability in a slip and fall action against a landlord and tenant," id. at 1378 (emphasis added). Combs involved a suit brought by a restaurant patron who was injured when she tripped over an elevated divider located in a shopping center parking lot. The suit was brought against both the owner of the restaurant and his lessor, the owner of the shopping center, who had exclusive control over the parking lot. The court in Combs held that the restaurant owner, despite his lack of control over the parking lot, had a duty to warn his patrons of the known dangerous condition of the improperly marked or lighted elevated divider.
We have no difficulty in distinguishing the facts of Combs from those in the case sub judice. The liability of a lessee for a known static dangerous condition under the lessor's exclusive control, such as the parking lot divider, is simply not analogous to the lessee's liability for criminal acts of third parties occurring in an area contractually under the lessor's exclusive control. A warning posted in Burdines' entranceway or anywhere on Burdines' property would not have prevented the tragic events which occurred in the parking garage controlled by Equity. Under the lease between Equity and Burdines, admitted into evidence at trial, Burdines is required to pay Equity "as additional rent ... that proportion of the total actual cost to Lessor of maintaining ... the parking area of the shopping center."
We cannot agree with the trial court that Combs applies to the case at bar. We do agree with and adopt the law and reasoning of the court in Morgan v. Bucks Associates, 428 F. Supp. 546 (E.D.Penn. 1977), regarding a lessee's liability for third party criminal attacks on invitees occurring in an area exclusively controlled by the lessor. The plaintiff in Morgan was an employee of a store located in a shopping center and was assaulted by a third party as she was walking to her car in the shopping center parking lot. The trial court granted the motion for directed verdict made by the plaintiff's employer, a lessee in the shopping center. The court denied the shopping center's motion for a new trial following an adverse jury verdict and stated that
where the owner of real estate leases parts thereof to several tenants, but retains control of the common areas which are to be used by the business invitees of the various tenants, the obligation of keeping the common areas safe for such business invitees is imposed upon the landlord and not upon the tenants, in the absence of a contrary provision in the leases [citation omitted],
id. at 549.
The trial court erred in not granting Burdines' motion for directed verdict and in applying Combs to the facts before it. The trial court also erred in allowing into evidence testimony of the plaintiff's expert to the effect that Burdines and Equity each had a duty to keep the parking area safe. "It is elementary that the conclusion or opinion of an expert witness based on facts and inferences not supported by the evidence in a cause has no evidential value." Arkin Construction Co. v. Simpkins, 99 So.2d 557, 561 (Fla. 1957). An expert's opinion, if based upon an erroneous concept of law, is equally devoid of competency. See Stubbs v. State Department of Transportation, 332 So.2d 155 (Fla. 1st DCA 1976).
The jury in the instant case should not have received the incompetent testimony of the plaintiff's expert and should not have been instructed that Burdines had a Combs type of duty to warn.
*13 As to Equity we affirm the judgment entered by the trial court upon a holding that it had a duty to guard against subjecting its business invitees to reasonably foreseeable dangers. See Fernandez v. Miami Jai-Alai, Inc., 386 So.2d 4 (Fla.3d DCA 1980). The evidence concerning prior crimes which occurred in the shopping center was properly admitted. See Green Companies v. Divicenzo, 432 So.2d 86 (Fla.3d DCA 1983); Admiral's Port Condominium v. Feldman, 426 So.2d 1054 (Fla.3d DCA), review denied mem., 434 So.2d 887 (Fla. 1983).
For the foregoing reasons the judgment of the trial court is affirmed in part, reversed in part and remanded with directions to enter a final judgment finding Equity 100% negligent.
Affirmed in part, reversed in part and remanded with directions.