676 So.2d 12 (1996)
WAL-MART STORES, INC., a corporation, and Merrill Crossings Associates, a Florida general partnership, Appellants,
v.
Lawrence Howard McDONALD, individually, Renee Helen McDonald, individually, Lawrence Howard McDonald, III, individually, and Mathew Adam McDonald and Ashlee Elizabeth McDonald, by and through their natural guardian and next best friend Lawrence Howard McDonald, Appellees.
No. 95-1612.
District Court of Appeal of Florida, First District.
June 11, 1996.
Rehearing Denied July 25, 1996.
*13 Jeffrey P. Gill, of Bridgers, Gill & Holman, Pensacola, for Appellant/Cross-Appellee Wal-Mart Stores, Inc.
Richard A. Sherman & Rosemary B. Wilder, of Law Office of Richard A. Sherman, P.A., Fort Lauderdale, and Noah H. Jenerette, of Boyd & Jenerette, P.A., Jacksonville, for Appellant/Cross-Appellant Merrill Crossings Associates.
Jeffery B. Morris, of Morris & Bernard, Jacksonville; Daniel A. Smith, Jacksonville, for Appellees.
*14 MICKLE, Judge.
Wal-Mart Stores, Inc. ("Wal-Mart"), appeals both 1) a final judgment in which Wal-Mart and the other defendant below, Merrill Crossings Associates ("Merrill Crossings"), were found jointly and severally liable for total economic damages to appellee Lawrence Howard McDonald and other members of his family ("McDonald"); and in which Wal-Mart was found liable for an additional sum for total non-economic damages; and 2) a final judgment on Count I in Merrill Crossings' cross-claim against Wal-Mart. Merrill Crossings cross-appeals the final judgment and cost judgment entered in favor of McDonald as well as the order denying its post-trial motions. We affirm the judgments, and we certify two questions of great public importance.
Lawrence Howard McDonald was shot and injured by an unknown assailant on the night of July 30, 1993, in a shopping center parking lot outside a Wal-Mart Store in Jacksonville. Mr. McDonald and other members of his family, the appellees, brought a personal injury lawsuit against Wal-Mart and against the owner and developer of the shopping center, Merrill Crossings, Wal-Mart's lessor. McDonald's complaint against Wal-Mart and Merrill Crossings alleged that the appellants had failed to employ reasonable security measures and that this omission resulted in the shooting of McDonald. The appellants answered by denying their liability and asserting that McDonald's injuries had been caused by a non-party to the lawsuit. The jury found Wal-Mart 75 percent negligent, Merrill Crossings 25 percent negligent, and McDonald not negligent at all. As a result of a summary judgment entered before trial, Merrill Crossings moved for and was granted final judgment on Count I of its cross-claim for indemnity against Wal-Mart in the amount of its liability to McDonald plus attorney's fees and costs. The appellants filed motions for new trial and judgment notwithstanding the verdict, all of which were denied. The appellants allege several errors on appeal.

Failure to Admit Into Evidence Crime Data From a Different Mall
The appellants contend that the trial court erred by not admitting certain reports of crimes committed in the vicinity of a much larger regional retail center in Jacksonville, Regency Square Mall. The records in question relate to the appellants' efforts to show that prior to McDonald's shooting at Merrill Crossings' shopping center, the same perpetrator attempted an armed robbery of a bank patron at an automated teller machine on the same evening five miles away across a service road from Regency Square Mall. The bank site had no security, but there was security about 200-400 yards away at the mall. The parking lot in which McDonald was shot did not have security on the date of the incident. We conclude that the appellants did not lay an adequate predicate showing how the two locations and circumstances are "substantially similar." Frazier v. Otis Elevator Co., 645 So.2d 100 (Fla. 3d DCA 1994). We note that the appellants have not demonstrated prejudice, as the lower court permitted Wal-Mart's expert to use the "calls to service" records as a basis for his opinions, and Wal-Mart's counsel was allowed to mention that the expert had referred to these records. Accordingly, the trial court did not abuse its discretion in excluding the records. Forester v. Norman Roger Jewell & Brooks Intern., Inc., 610 So.2d 1369 (Fla. 1st DCA 1992).

Denial of Merrill Crossings' Motion for Directed Verdict
Merrill Crossings contends that the trial court erred as a matter of law in failing to direct a verdict in its favor. We disagree. A directed verdict should not be entered unless, as a matter of law, no proper view of the evidence could possibly sustain a verdict for the non-moving party. Sun Life Ins. Co. of America v. Evans, 340 So.2d 957 (Fla. 3d DCA 1976). The law in Florida is settled that if a lessor (such as Merrill Crossings) surrenders possession and control of the premises to a lessee (such as Wal-Mart), the lessor will not be liable for injuries to third parties occurring on the premises. Federated Dep't Stores, Inc. v. Doe, 454 So.2d 10 (Fla. 3d DCA 1984); Arias v. State Farm Fire & Cas. Co., 426 So.2d 1136 (Fla. 1st *15 DCA 1983). This is because, generally, the duty to protect third persons from injuries on the premises rests not on legal ownership of the premises, but on the rights of possession, custody, and control of the premises. Kline v. 1500 Massachusetts Ave. Apt. Corp., 439 F.2d 477 (D.C.Cir.1970); Bovis v. 7-Eleven, Inc., 505 So.2d 661, 663-64 (Fla. 5th DCA 1987).
The premises in question here are the shopping center parking lot outside the Wal-Mart, where the assailant shot McDonald soon after McDonald and his girlfriend exited the store and got to their vehicle. The specific site is designated in the record as within the Wal-Mart Tax Plat Area. Both a landlord and a tenant can have concurrent duties to provide reasonably safe premises. City of Pensacola v. Stamm, 448 So.2d 39 (Fla. 1st DCA), rev. den., 456 So.2d 1181 (Fla.1984); Bovis, 505 So.2d at 661. The lease between Merrill Crossings and Wal-Mart did not specifically address security. Even if we assume that the lease placed the greater share of general duties and responsibilities upon Wal-Mart, we conclude there is competent substantial evidence showing that Merrill Crossings exercised some control over the shopping center parking lot and public access thereto. Bovis, 505 So.2d at 664 (duty to protect others from dangerous condition on premises rests on right to control access to third parties). Thus, neither of the appellants exercised the type of exclusive control over the parking lot that existed in Publix Super Markets, Inc. v. Jeffery, 650 So.2d 122 (Fla. 3d DCA 1995) (tenant/grocery store was not liable to invitee who was shot as he attempted to stop purse-snatcher in shopping center parking lot adjacent to tenant's store, where responsibility to provide security guards, to patrol common areas, and to warn of prior criminal attacks in lot had been assumed entirely by landlord/shopping center pursuant to lease), and in Federated Dep't Stores, 454 So.2d at 10. Viewed in a light most favorable to the appellees as non-movants, the evidence supports the ruling. Sears, Roebuck & Co. v. McKenzie, 502 So.2d 940 (Fla. 3d DCA), rev. den., 511 So.2d 299 (Fla.1987).

Merrill Crossings' Cross-Claim Issue
Merrill Crossings brought a cross-claim against Wal-Mart for breach of contract in Count I, alleging 1) that the lease agreement required lessee Wal-Mart to obtain liability insurance to cover Merrill Crossings in the tax plat area where the shooting occurred and 2) that Wal-Mart failed to meet this obligation. Merrill Crossings claimed entitlement to indemnity against Wal-Mart. Wal-Mart denied having breached an agreement, and it claimed that the lease obligated Wal-Mart only to provide coverage for itself and Merrill Crossings on "the demised premises," an area comprising the store and its garden center but not the parking lot, pursuant to sections (1)(A) and (12)(A) of the lease. On the other hand, Merrill Crossings relied on section (12)(B) of the lease, which provided that the lessor shall maintain insurance "on the Common Areas (except the Wal-Mart Tax Plat Area)." The trial court determined that the appellants "foresaw the risk from premises liability and clearly bargained for a contractual provision with the intent to shift the risk of loss onto a liability insurer." The court granted Merrill Crossings' motion for summary judgment and denied Wal-Mart's motion for summary judgment on this issue. The effect of the ruling is that, to the extent Merrill Crossings sustained damages in McDonald's lawsuit by Wal-Mart's failure to procure such insurance for the tax plat area, Wal-Mart would be liable to Merrill Crossings for breach of contract and for reimbursement to the lessor for damages. Final judgment was entered in favor of Merrill Crossings on its cross-claim against Wal-Mart. The movants agreed that the issue before the trial court was solely a question of law, namely, whether the lease required Wal-Mart to require liability insurance to protect Merrill Crossings from premises liability at the site of the shooting. National Luggage Services, Inc. v. Reedy Forwarding Co., Inc., 339 So.2d 305 (Fla. 3d DCA 1976) (where liability rests on construction of written instruments and their legal effect, issue is one of law and is properly determined by summary judgment). We affirm the rulings on the appellants' motions for summary judgment, as these determinations come to *16 us clothed in a presumption of correctness, and Wal-Mart has not shown the rulings to be clearly erroneous. Randy Intern., Ltd. v. American Excess Corp., 501 So.2d 667 (Fla. 3d DCA 1987); Gars v. Woodard, 214 So.2d 385, 386 (Fla. 3d DCA 1968).

Exclusion of Intentional Criminal Attacker From Verdict Form
The trial court held that because the perpetrator who shot McDonald had committed an intentional, criminal act, the attacker would not be included on the verdict form. Citing section 768.81, Florida Statutes, which the trial court found inapplicable, and Fabre v. Marin, 623 So.2d 1182 (Fla.1993), the appellants claim that the omission of the assailant from the verdict form constitutes reversible error. We disagree, finding especially instructive, on this same issue, our sister court's recent opinion in Slawson v. Fast Food Enterp., 671 So.2d 255 (Fla. 4th DCA 1996) (reversing trial court's ruling that had allowed jury in negligence suit to apportion fault and liability between the negligent fast-food restaurant and the intentional, criminal tortfeasor who attacked the plaintiff on the restaurant's premises).
The statute reads in pertinent part:
768.81 Comparative fault.___
(1) DEFINITION.___As used in this section, "economic damages" means past lost income and future lost income reduced to present value; medical and funeral expenses; lost support and services; ... and any other economic loss which would not have occurred but for the injury giving rise to the cause of action.
(2) EFFECT OF CONTRIBUTORY FAULT.___In an action to which this section applies, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for any injury attributable to the claimant's contributory fault, but does not bar recovery.
(3) APPORTIONMENT OF DAMAGES.___In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
(4) APPLICABILITY.___
(a) This section applies to negligence cases. For purposes of this section, "negligence cases" includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories. In determining whether a case falls within the term "negligence cases," the court shall look to the substance of the action and not the conclusory terms used by the parties.
(b) This section does not apply ... to any action based upon an intentional tort, or to any cause of action as to which application of the doctrine of joint and several liability is specifically provided by chapter 403, chapter 498, chapter 517, chapter 542, or chapter 895 [footnotes deleted].
§ 768.81, Fla. Stat. (1993). The resolution of this issue requires us to determine what the Florida Legislature intended to include and exclude in this statute. The appellate court in Slawson offered a concise survey of the legal foundation on which our answer must rest:
At common law the defense of contributory negligence was traditionally not available to an intentional wrongdoer. Deane v. Johnston, 104 So.2d 3 (Fla.1958). After the supreme court replaced contributory negligence with comparative negligence, the court held that intentional wrongdoing could not be used for purposes of comparative fault to reduce a plaintiff's recovery. Island City Flying Service v. General Electric Credit Corp., 585 So.2d 274 (Fla. 1991). The common law imposed joint and several liability only against joint tortfeasors, who were defined as parties whose negligence had combined to produce plaintiff's injury. Davidow v. Seyfarth, 58 So.2d 865 (Fla.1952) [footnote omitted].

*17 Finally, under the common law, an owner of land could not escape liability for failing to prevent the foreseeable risk of harm from the intentional conduct of another on his land by simply pointing to the intentional conduct of the attacker. Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98 (Fla. 3d DCA 1980).
671 So.2d at 257 (emphasis in original).
Being in derogation of the common law, section 768.81, Florida Statutes, must be strictly construed in favor of the common law. Ady v. American Honda Finance Corp., 675 So.2d 577 (Fla.1996); Carlile v. Game & Fresh Water Fish Comm., 354 So.2d 362 (Fla.1977). As the supreme court stated in Carlile, any legislative intent either to abolish or to limit the common law must indicate such change clearly, or else the rule of common law stands. Id. at 364. A court will not infer that a statute was intended to enact any change in the common law other than what is specified and plainly pronounced. Therefore, a statute such as section 768.81 should not be interpreted to displace the common law any more than is necessary. Godales v. Y.H. Investments, Inc., 667 So.2d 871 (Fla. 3d DCA 1996) (as § 768.81 does not explicitly abrogate common-law rule that child's recovery should not be diminished by parent's negligence, statute must be construed to preserve common-law rule); Robinson & St. John Advertising and Public Relations, Inc. v. Lane, 557 So.2d 908, 909 (Fla. 1st DCA 1990).
Subsection (3) of the statute provides that only "[i]n cases to which this section applies," judgment is to be entered against each liable party "on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; ..." We must look to subsection (4) to determine applicability. Subsection (4)(a) states that the statute applies only "to negligence cases." In determining whether a case falls within the designation "negligence cases," Florida courts must look "to the substance of the action and not the conclusory terms used by the parties." Subsection (4)(b) specifies that the section is inapplicable "to any action based upon an intentional tort." See Bel-Bel Intern. Corp. v. Barnett Bank of South Florida, N.A., 158 B.R. 252, 256 (S.D.Fla.1993); Smith v. Department of Ins., 507 So.2d 1080, 1091 (Fla.1987) (Florida Legislature "did not abrogate joint and several liability in the areas of intentional torts").
At the outset, we decline to accept the appellants' position that McDonald is estopped from arguing that the case involved an intentional tort merely because the suit against Wal-Mart and Merrill Crossings was based on a theory of negligence. We believe the appellants received adequate notice that their alleged negligent supervision of the parking lot was believed to have contributed to or caused the intentional, criminal shooting attack of McDonald by a third party. McDonald argues convincingly that because "the substance of the action" arose from his being intentionally shot, the ensuing litigation constituted an "action based on an intentional tort" for statutory purposes.
Having considered "the substance" of the appellees' action, we conclude that it is based on an intentional tort rather than mere negligence. The evidence showed that McDonald had exited Wal-Mart and was getting into the driver's seat of his car when the unknown assailant attempted to rob him and then pointed the gun at McDonald's head and shot him. The perpetrator's actions were intentional, and not merely negligent, such as by an accidental discharge of the gun. See Stepp v. State Farm Fire & Cas. Co., 656 So.2d 494 (Fla. 1st DCA) (the insured's shooting of his gun from the back seat of a police car was neither an "accident" nor "occurrence" within the meaning of a homeowner's policy, where any inference that the insured did not intend to fire the gun directly at a police officer would be merely speculative and conjectural), rev. den., 663 So.2d 632 (Fla.1995); McDonald v. Ford, 223 So.2d 553 (Fla. 2d DCA 1969) (because negligence connotes an unintentional act, where a defendant male embraced and kissed the resisting female plaintiff, thereby committing assault and battery, and she struck her face on an unknown object, the plaintiff could not maintain an action for injuries sustained on a theory of negligence).
*18 The appellants stress that the appellees' cause of action was for the negligent failure to protect McDonald from the foreseeable intentional attack in the parking lot. We note, as did the Fourth District Court in Slawson, 671 So.2d at 257-58, that it was foreseeable, intentional conduct (and not simply negligent conduct) from which the appellants had a duty to protect McDonald. The fact that the nature of the appellants' fault is merely negligence regarding the shooter's intentional wrongdoing does not alter the basic character of the claim brought by McDonald. As in Slawson, the form of the pleading here may have been negligence, but "the substance of the action" was intentional wrongdoing. Id. In contrast, to construe the statute as suggested by the appellants would produce the same anomalous result described in Slawson:
Reading the statute as contended by Burger King produces a perverse and irreconcilable anomaly. On the one hand Burger King owed a duty to protect [the victim, a patron] from foreseeable intentional assaults by other patrons; but on the other hand, Burger King contends, it is entitled under section 768.81 to diminish or defeat its liability for the breach of that duty by transferring it to the very intentional actor it was charged with protecting her against.
Id.
We are convinced that the express distinction made by the legislature in subsection (4) between "intentional" and "negligence" actions prevents us from finding a statutory intent to eliminate the common-law rules barring the appellants from reducing their own liability because of the intentional, criminal act of a non-party from whom the appellants were charged with protecting McDonald. The appellants contend that Fabre controls the case at bar, whereas the appellees assert that the instant question was neither presented nor decided by the supreme court. The facts in that case bear further scrutiny.
In Fabre, Mrs. Marin was injured while riding as a passenger in an automobile driven by Mr. Marin, her husband. Mrs. Marin sued Mr. and Mrs. Fabre, claiming that while driving Mr. Fabre's car, Mrs. Fabre had negligently changed lanes in front of the Marin vehicle, causing it to swerve into a guardrail. The jury returned a verdict finding both drivers 50 percent at fault. The jury awarded Mrs. Marin $12,750 in economic damages and $350,000 in noneconomic damages. The trial court granted a $5,000 remittitur on Mrs. Marin's economic damages but did not disturb her noneconomic damages. Id. at 1183.
On appeal, the issue was whether the liability for noneconomic damages should be apportioned to the Fabres on the basis of the percentage of fault attributed to them. This required the appellate court to interpret subsection (3) of the comparative fault statute, supra. The Third District Court acknowledged that Mrs. Marin could not recover damages from her husband because of the then doctrine of interspousal tort immunity. The court concluded that in discarding joint and several liability, the Florida Legislature did not intend to curtail a fault-free plaintiff's ability to recover her total damages. Instead, the legislature intended only to apportion liability among those tortfeasors who were defendants in the lawsuit. Therefore, subsection (3) was interpreted so as not to bar Mrs. Marin's recovery. The full amount of the judgment was affirmed, and a conflict was certified with Messmer v. Teacher's Ins. Co., 588 So.2d 610 (Fla. 5th DCA 1991) (carrier liable for damage caused by uninsured motorist who was 20 percent at fault in causing accident with insured vehicle was not liable for the entire amount of the injured passenger's damages merely because the injured passenger's husband, who drove the insured vehicle at the time of accident, could not have been held liable due to spousal immunity provision in policy), rev. den., 598 So.2d 77 (Fla.1992). See Fabre v. Marin, 597 So.2d 883, 886 (Fla. 3d DCA 1992).
The Fabres' appeal required the Supreme Court of Florida to determine the legislative intent of section 768.81, Florida Statutes. The court stated:
We conclude that the statute is unambiguous. By its clear terms, judgment should be entered against each party liable on the basis of that party's percentage of fault. The Fabres' percentage of fault was 50%. *19 To accept Mrs. Marin's position would require the entry of a judgment against the Fabres in excess of their percentage of fault and directly contrary to the wording of the statute.... The "fault" which gives rise to the accident is the "whole" from which the fact-finder determines the party-defendant's percentage of liability. Clearly, the only means of determining a party's percentage of fault is to compare that party's percentage to all of the other entities who contributed to the accident, regardless of whether they have been or could have been joined as defendants.
Even if it could be said that the statute is ambiguous, we believe that the legislature intended that damages be apportioned among all participants to the accident.
* * * * * *
We are convinced that section 768.81 was enacted to replace joint and several liability with a system that requires each party to pay for noneconomic damages only in proportion to the percentage of fault by which that defendant contributed to the accident.
Fabre, 623 So.2d at 1185. Additionally, the supreme court held:
The court below erroneously interpreted section 768.81 by concluding that the legislature would not have intended to preclude a fault-free plaintiff from recovering the total of her damages. Ever since this Court permitted contribution among joint tortfeasors, the main argument for retaining joint and several liability was that in the event one of the defendants is insolvent the plaintiff should be able to collect the entire amount of damages from a solvent defendant. By eliminating joint and several liability through the enactment of section 768.81(3), the legislature decided that for purposes of noneconomic damages a plaintiff should take each defendant as he or she finds them. If a defendant is solvent, the judgment of liability of another defendant is not increased. The fault statute requires the same result where a potential defendant is not or cannot be joined as a party to the lawsuit. Liability is to be determined on the basis of the percentage of fault of each participant to the accident and not on the basis of solvency or amenability to suit of other potential defendants. The fact that Mrs. Marin could not sue her husband does not mean that he was not partially at fault in causing the accident.
Id. at 1186. The supreme court determined that Mrs. Marin's judgment should be reduced by 50 percent of her non-economic damages. No reduction was made in economic damages because under subsection (3), joint and several liability continues to apply when a defendant's negligence equals or exceeds a plaintiff's. Messmer was approved, the appealed decision in Fabre was quashed, and the cause was remanded. Id. at 1187.
The parties in the case at bar disagree over whether Fabre disposes of the issue of the criminal assailant's exclusion from the verdict form. In Fabre, the supreme court stated: "Clearly, the only means of determining a party's percentage of fault is to compare that party's percentage to all of the other entities who contributed to the accident, regardless of whether they ... could have been joined as defendants." 623 So.2d at 1185. The contribution provision in the Uniform Contribution Among Tortfeasors Act states in pertinent part:
768.31 Contribution among tortfeasors.___
* * * * * *
(3) PRO RATA SHARES.___In determining the pro rata shares of tortfeasors in the entire liability:
(a) Their relative degrees of fault shall be the basis for allocation of liability.
§ 768.31(3), Fla. Stat. (1993). The "apportionment of damages" provision in the comparative fault statute states:
In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability.
§ 768.81(3), Fla. Stat. (1993). Because the statutes speak in terms of percentages of fault rather than percentages of negligence, the appellants argue that the legislature intended the law to apply even where some sort of fault other than negligence, e.g., an *20 intentional, criminal act, is involved. Assuming that the jury could have found the unknown perpetrator of the shooting wholly or partly at fault, the appellants rely on the supreme court's recitation of public policy in Fabre:
There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss.
Fabre, 623 So.2d at 1187, quoting Brown v. Keill, 224 Kan. 195, 580 P.2d 867, 874 (1978).
On the other hand, the appellees equate "fault" and "negligence" and, instead, note the striking distinction between the merely negligent non-party tortfeasor in Fabre and the intentional, criminal non-party actor in the case sub judice. Likewise, the Slawson court distinguished Fabre in this manner: "Which arguably negligent parties should be considered for purposes of apportionment of fault on the jury form in a pure negligence action is quite different from whether the statute is even applicable to the action in which it was raised." Slawson, 671 So.2d at 259.
Although Fabre illustrates the evolution of Florida tort law toward a system that requires each party to pay for non-economic damages only in proportion to its percentage of fault, McDonald argues convincingly that the comparison of negligent acts to criminal, intentional acts was never envisioned as part of that change. See Flood v. Southland Corp., 416 Mass. 62, 616 N.E.2d 1068 (1993) (as intentional tortious conduct cannot be negligent conduct under Massachusetts comparative negligence statute, remanding for determination of whether defendant's stabbing of plaintiff in parking lot of co-defendant/convenience store was intentional). For instance, in its seminal decision in Hoffman v. Jones, 280 So.2d 431 (Fla.1973) (holding that a plaintiff in a negligence-based action would no longer be denied any recovery because of his contributory negligence), the supreme court spoke of the shift in the law in Florida from contributory negligence to comparative negligence:
A plaintiff is barred from recovering damages for loss or injury caused by the negligence of another only when the plaintiff's negligence is the sole legal cause of the damage, or the negligence of the plaintiff and some person or persons other than the defendant or defendants was the sole legal cause of the damage.
Id. at 438. The purpose of adopting comparative negligence in Florida was:
(1) To allow a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury; and (2) To apportion the total damages resulting from the loss or injury according to the proportionate fault of each party.
Id. at 439. In Fabre, the supreme court spoke in terms of fault arising from the context of an "accident":
The "fault" which gives rise to the accident is the "whole" from which the fact-finder determines the party-defendant's percentage of liability. Clearly, the only means of determining a party's percentage of fault is to compare that party's percentage to all of the other entities who contributed to the accident, regardless of whether they have been or could have been joined as defendants.
Fabre, 623 So.2d at 1185. The court equated a defendant's "fault" with the amount of its "negligence." We think that the factual context from which the holding in Fabre arose___an automobile accident involving purely negligent acts___is materially different from a criminal design such as was carried out by McDonald's assailant. The shooting of McDonald was an intended result, not a mere accident. Therefore, we conclude that Fabre and its progeny neither addressed nor disposed of the issue presented in this appeal. Furthermore, McDonald's interpretation of the statute is consistent with the proposition that negligent acts are fundamentally different from intentional acts. See, e.g., White Const. Co., Inc. v. Dupont, 455 So.2d 1026 (Fla.1984) (gross negligence will not sustain an award of punitive damages, but reckless indifference equivalent to intentional conduct will); Etcher v. Blitch, 381 So.2d 1119 (Fla. 1st DCA 1979) (a plea of *21 self-defense is an absolute bar to an action based on intentional shooting but is not an absolute bar to a claim based on negligence), cert. den., 386 So.2d 636 (Fla.1980); Cruise v. Graham, 622 So.2d 37, 40 (Fla. 4th DCA 1993) (comparative negligence is not available as defense to intentional tort of fraudulent misrepresentation); McDonald, 223 So.2d at 555 (negligence connotes an unintentional tort).
This distinction was addressed in Publix Supermarkets, Inc. v. Austin, 658 So.2d 1064 (Fla. 5th DCA), rev. den., 666 So.2d 146 (Fla.1995), which required the district court to resolve how section 768.81, Florida Statutes, affects a case with two joint tortfeasors___one alleged to be negligent and the other charged with a willful tort. Mr. Austin, a pickup truck driver who collided with a motorcyclist, was alleged to be negligent in the operation of his vehicle, whereas Publix was alleged to have willfully sold alcohol to Austin, an underage driver. The jury found there had been a willful and unlawful sale of alcohol by Publix to Austin. The jury allocated fault between Austin and Publix at 80 percent and 20 percent, respectively. Publix appealed; Mr. Wurtz, the injured motorcyclist, cross-appealed asserting, inter alia, that given the particular facts, the trial court had erred in applying the comparative negligence statute. The Fifth District Court stated:
[W]e agree with Wurtz that this was not a case where a jury could assess the comparative fault of the two defendants, Austin and Publix.
Austin and Publix were not alleged to be joint tortfeasors in pari delicto. Austin was charged with a negligent tort; Publix was charged with a willful tort. Section 768.125 indicates that the culpable vendor becomes vicariously liable for the damages caused by the intoxicated tortfeasor. There is no logical way for a jury to balance the wrongdoing of the willful vendor and the intoxicated tortfeasor. [Citations omitted].
In the instant case, if Publix were liable, it would be liable for the entire judgment entered against Austin. Since there was no contributory negligence on the part of Wurtz, and no unjoined "phantom tortfeasors" in this case, the judgment entered against Austin should reflect the entire jury verdict.
Id. at 1068. The Fifth District Court's observations in Austin are consistent with the following statement by the Louisiana Supreme Court:
Because we believe that intentional torts are of a fundamentally different nature than negligent torts, we find that a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible.
Veazey v. Elmwood Plantation Assoc., Ltd., 650 So.2d 712, 719-20 (La.1994) (in attack victim's negligence case, trial court did not err in refusing to allow comparison of fault between defendant/apartment manager and non-party rapist, but Louisiana law is broad enough to allow trial courts to determine, on case-by-case basis, whether to permit comparison of fault between intentional wrongdoers and negligent tortfeasors); Burke v. 12 Rothschild's Liquor Mart, Inc., 148 Ill.2d 429, 170 Ill.Dec. 633, 643, 593 N.E.2d 522, 532 (1992) ("Because of the qualitative difference between simple negligence and willful and wanton conduct, and because willful and wanton conduct carries a degree of opprobrium not found in merely negligent behavior, we hold that a plaintiff's negligence cannot be compared with a defendant's willful and wanton conduct."). Dean Prosser echoed these conclusions, stating that intentional wrongdoing differs from simple negligence "not merely in degree but in the kind of fault... and in the social condemnation attached to it." Prosser and Keeton on the Law of Torts, § 65, at 462 (5th ed.1984).
The public policy underlying our construction of section 768.81, Florida Statutes, is that negligent tortfeasors such as Wal-Mart and Merrill Crossings should not be permitted to reduce their fault by shifting it to another tortfeasor whose intentional, criminal conduct was a foreseeable result of their negligence. See Bach v. Florida R/S, Inc., 838 F.Supp. 559 (M.D.Fla.1993) (order entering summary judgment in favor of plaintiff, a rape victim, in suit alleging defendant/property interests' negligent failure to warn or to *22 provide adequate protection, upon finding that the jury may not apportion fault under the "contribution among tortfeasors" law, § 768.31, among the negligent tortfeasors and the alleged rapist, an intentional tortfeasor); Kansas State Bank & Trust Co. v. Specialized Transp. Services, Inc., 249 Kan. 348, 819 P.2d 587, 606 (1991) (negligent tortfeasor should not be allowed to reduce its fault by the intentional fault of another that the negligent tortfeasor had a duty to prevent); Gould v. Taco Bell, 239 Kan. 564, 722 P.2d 511 (1986) (in patron's action against restaurant for injuries resulting from third party's intentional assault, fault of third-party patron cannot be compared with negligence of restaurant); Veazey, 650 So.2d at 712; Restatement (Second) of Torts, § 344 (1963) (land possessor entreating members of public to do business is subject to liability to public for physical harm caused by intentionally harmful acts of third persons on property and by land possessor's failure to exercise reasonable care to provide adequate warning or protection). Reducing the responsibility of a negligent tortfeasor by allowing that tortfeasor to place the blame entirely or largely on the intentional wrongdoer would serve as a disincentive for the negligent tortfeasor to meet its duty to provide reasonable care to prevent intentional harm from occurring. It is neither unfair nor irrational for an innocent plaintiff to collect full damages from negligent defendants who knew, or should have known, that an injury would be intentionally inflicted and failed in their duty to prevent it.
McDonald notes that it makes sense that section 768.81, Florida Statutes, protects a plaintiff by allowing the choice between collecting full damages from either the intentional actor or the negligent party whose negligence caused the intentional act. At the same time, the contribution statute prevents an intentional actor who pays the plaintiff from collecting against a negligent co-tortfeasor. § 768.31(2)(c), Fla. Stat. (1993).
In summary, we conclude that by its express language in section 768.81, Florida Statutes, the legislature did not intend to treat negligent acts and criminal, intentional acts the same. We believe, likewise, that the legislature did not intend for a criminal act such as the shooting of McDonald to be included within the concept of "fault" when determining a negligent party's percentage of liability under the comparative negligence statute. The inherent distinction between negligent and criminal, intentional torts is considerable, and we find it illogical and impractical for a fact-finder to have to compare or balance the two types of conduct. We believe it is reasonable to interpret section 768.81, Florida Statutes, as a legislative preference not to transfer a negligent tortfeasor's duty of care over to a criminal tortfeasor, especially where a defendant's acts or omissions are the proximate cause of the intended tort. See Hall v. Billy Jack's, Inc., 458 So.2d 760 (Fla.1984) (lounge proprietor owes its patrons the duty to protect them from reasonably foreseeable harm). Therefore, we conclude that section 768.81 is inapplicable to the instant action. Changes, if any, in this approach are properly left to the Florida Legislature, not to the courts. Walt Disney World Co. v. Wood, 515 So.2d 198, 202 (Fla.1987). Accordingly, we hold that the trial court did not err in excluding the criminal assailant from the verdict form.
Courts have noted that the "determination whether certain conduct is amenable to apportionment... affects not only the plaintiff's potential recovery, but also the liability among joint tortfeasors." See, e.g., Blazovic v. Andrich, 124 N.J. 90, 590 A.2d 222, 229 (1991) (where a restaurant/bar patron was assaulted and battered by other patrons in the establishment's parking lot, the cause was remanded for new trial on the issue of liability, and the jury was directed to determine relative percentages of fault of the restaurant/bar, the intentional tortfeasors, and the plaintiff). As the consequences of such a determination can be substantial, we certify to the supreme court the following questions of great public importance:
Is an action alleging the negligence of the defendants in failing to employ reasonable security measures, with said omission resulting in an intentional, criminal act being perpetrated upon the plaintiff by a non-party on property controlled by the defendants, an "action based upon an intentional tort" pursuant to section 768.81(4)(b), Florida *23 Statutes (1993), so that the doctrine of joint and several liability applies?
In such an action, is it reversible error for the trial court to exclude an intentional, criminal non-party tortfeasor from the verdict form?
AFFIRMED.
LAWRENCE, J., concurs.
WEBSTER, J., concurs with written opinion.
WEBSTER, Judge, concurring.
I concur fully in the result reached by the majority on all issues. I concur, also, in the analysis employed to arrive at the result as to all issues except that concerned with exclusion from the verdict form of the individual who committed the criminal attack on McDonald. As to that issue, while I reach the same destination, I do so by following a rather different path. Accordingly, I believe that it might be helpful if I put my steps in writing.
The causes of action asserted against appellants in the complaint are based on negligent failure to provide adequate security to prevent criminal attacks and negligent failure to warn of the danger of such attacks. As an initial matter, it seems to me relatively clear that section 768.81, Florida Statutes (1993), is intended to apply to claims of this type. I can arrive at no other conclusion from the language of section 768.81(4)(a), which states that "[t]h[e] section applies to negligence cases," and then defines "`negligence cases'" to include "civil actions for damages based upon theories of negligence." Respectfully, I am unable to follow the reasoning which leads the court in Slawson v. Fast Food Enterprises, 671 So.2d 255 (Fla. 4th DCA 1996)and the majority hereto conclude that claims such as those asserted by appellees are actually "based upon an intentional tort." Id. at 257-58.
Having concluded that section 768.81 was intended by the legislature to apply to actions such as this, my examination of that section, and particularly of subsection (3), leads me to conclude that an ambiguity exists because of the use of the word "fault." In particular, it is not clear to me from the context of the statute whether "fault" is intended to have a meaning synonymous with "negligence," or whether it is intended to be read as having a more general meaning. From a reading of the statute, alone, it seems to me that the two meanings are, more-or-less, equally plausible. Searching for assistance in discerning the meaning intended by the legislature, I have turned to the legislative history of the statute.
Section 768.81 was originally enacted as section 60 of the Tort Reform and Insurance Act of 1986. Ch. 86-160, § 60, at 755, Laws of Fla. In attempting to ascertain the intent of the language used in the statute, I have found informative both the Senate Staff Analysis and Economic Impact Statement relating to chapter 86-160, revised on July 23, 1986, and the House of Representatives Committee on Health Care and Insurance Staff Analysis, dated July 16, 1986 (both of which are stored in the Florida State Archives). See Department of Environmental Regulation v. SCM Glidco Organics Corp., 606 So.2d 722, 725 (Fla. 1st DCA 1992) ("Staff analyses of legislation should be accorded significant respect in determining legislative intent"). From a reading of the relevant portions of these two documents, it seems to me relatively clear that section 768.81 was intended to do two things, and nothing more: (1) to codify the law regarding comparative negligence as it then existed in the state; and (2) to abolish, subject to limited exceptions, the common law doctrine of joint and several liability in negligence cases. Thus, the Senate Staff Analysis reads:
Prior to 1973, Florida adhered to the legal doctrine of "contributory negligence." Contributory negligence provided that a plaintiff who was partially responsible for injuries caused by a negligent defendant could be totally barred from recovering from that defendant. In 1973, the Florida Supreme Court abolished contributory negligence and adopted the doctrine of "comparative negligence." See Hoffman v. Jones, 280 So.2d 431 (1973). Comparative negligence allows a plaintiff who is partially responsible for his injuries to recover from a negligent defendant. Under comparative negligence, a plaintiff's total *24 judgment against a negligent defendant is reduced by the percentage of the plaintiff's fault.
The principles of comparative negligence are also applicable in cases involving multiple defendants, with fault being apportioned among all negligent parties and the plaintiff's total damages being divided among those parties according to their proportionate degree of fault. However, in these cases, one or more of the defendants may ultimately be forced to pay more than their proportionate shares of the damages, pursuant to the doctrine of joint and several liability. Under this doctrine, if two or more defendants are found to be responsible for causing the plaintiff's injuries, the plaintiff can recover the full amount of damages from any one of them.
The bill's modified version of joint and several liability applies to all negligence cases which are defined to include, but not be limited to, civil actions based upon theories of negligence, strict liability, products liability, professional malpractice, breach of warranty, and other like theories. In such cases in which the award of damages does not exceed $25,000, joint and several liability applies to all of the damages. In cases in which the award of damages is greater than $25,000, liability for damages is based on each party's proportionate fault, except that each defendant who is equal to or more at fault than the claimant is jointly and severally liable for all economic damages. The bill's modified version of joint and several liability would not apply to actions based upon intentional torts or in which the Legislature has mandated that the doctrine apply....
Senate Staff Analysis at 24-25. The House Health Care and Insurance Committee Staff Analysis is to the same effect. House Staff Analysis at 26. Moreover, it expressly states that "[t]he act codifies the comparative negligence law." Id.
As both the Senate and the House Staff Analyses recognize, the supreme court adopted the doctrine of comparative negligence in Hoffman v. Jones, 280 So.2d 431 (Fla.1973). Subsequently, in Lincenberg v. Issen, 318 So.2d 386 (Fla.1975), the court was called upon to decide how the doctrine of comparative negligence should be applied in cases involving more than one allegedly negligent defendant. In such cases, it was apparent that a conflict existed between the doctrine of comparative negligence and the doctrine of joint and several liability. It is evident from the tenor of the court's opinion that it believed that the doctrine of joint and several liability should be abrogated in favor of the doctrine of comparative negligence, pursuant to which liability would be apportioned among all parties to an action according to their relative degrees of negligence. However, the court concluded that it was precluded from doing so because of the recently enacted Uniform Contribution among Tortfeasors Act. Ch. 75-108, Laws of Fla. (creating section 768.31, Florida Statutes). Instead, it held that a "plaintiff is entitled to a measurement of his full damages and the liability for these damages should be apportioned in accordance with the percentage of negligence as it relates to the total of all the defendants"; however, because of section 768.31, "[t]he negligence attributed to the defendants [is] then [to] be apportioned on a pro rata basis," and the "defendants will remain jointly and severally liable for the entire amount." 318 So.2d at 393-94.
Reading the court's decisions in Hoffman v. Jones and Lincenberg v. Issen together with the Senate and House Staff Analyses of what became section 768.81, the source of the word "fault" becomes clear (at least to me) the word "fault" is used repeatedly by the court in both opinions, in a sense obviously intended to be synonymous with the word "negligence." Thus, in Hoffman, the court says:
The rule of contributory negligence as a complete bar to recovery was imported into the law by judges. Whatever may have been the historical justification for it, today it is almost universally regarded as unjust and inequitable to vest an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of the other party to produce the loss. If fault is to remain the test of liability, then the doctrine of comparative negligence which involves apportionment *25 of the loss among those whose fault contributed to the occurrence is more consistent with liability based on a fault premise.
280 So.2d at 436 (emphasis added). The court then identifies "the purposes" for which it has concluded to adopt the doctrine of comparative negligence as:
(1) To allow a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury; and
(2) To apportion the total damages resulting from the loss or injury according to the proportionate fault of each party.
Id. at 439 (emphasis added). Similarly, in Lincenberg, after reaffirming "the purposes" behind the adoption in Hoffman of the doctrine of comparative negligence (318 So.2d at 390), the court says:
There is no equitable justification for recognizing the right of the plaintiff to seek recovery on the basis of apportionment of fault while denying the right of fault allocation as between negligent defendants.... Therefore, although this Court has in the past recognized as viable the principle of no contribution [among joint tortfeasors], in view of a re-examination of the principles of law and equity and in light of Hoffman and public policy, as a matter of judicial policy, it would be undesirable for this Court to retain a rule that under a system based on fault, casts the entire burden of a loss for which several may be responsible upon only one of those at fault, and for these reasons this Court recedes from its earlier decisions to the contrary.
Id. at 391.
Clearly, the word "fault" used in section 768.81 was merely lifted by the drafters from the language used by the court in Hoffman and Lincenberg. For this reason, it seems to me logical that the meaning intended for that word in those opinions should be ascribed to it when used by the legislature in the same context. Accordingly, I agree that the statute should be read as intended to limit apportionment of damages to those individuals or entities found to have been negligent those whose conduct was more than negligent were not intended to figure into the equation.
I note, in passing, that, if my analysis regarding the source of the word "fault" used in section 768.81 is correct, then it seems reasonable to conclude that the word "party" used in section 768.81(3) was, likewise, lifted from Hoffman and Lincenberg, and was, therefore, intended to have the same meaning as was ascribed to it in those cases. Clearly, in those cases, the court was using the word to refer only to those who were named participants in a lawsuit. If this analysis is correct, then perhaps the supreme court might wish to reconsider its conclusion in Fabre v. Marin, 623 So.2d 1182 (Fla.1993), that the legislature intended the word "party" used in section 768.81(3) to mean any individual or entity whose conduct "contributed to the accident, regardless of whether they have been or could have been joined as defendants." Id. at 1185.